TIMOTHY O'MALLEY & another[1] vs. SHERIFF OF
WORCESTER COUNTY & others.[2]

Suffolk. March 4, 1993. - May 4, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Imprisonment*, Enforcement of discipline. *Due Process of Law*, Prison dis-
ciplinary proceedings. *Public Officer. Civil Rights*, Immunity of public
official.

Discussion of the due process protections, State and Federal, accorded
prison inmates with respect to the conditions or degree of their confine-
ment. [135-139]
The court held that prison authorities must follow the procedures set forth
in.*Wolff* v. *McDonnell*, 418 U.S. 539 (1974), in imposing isolation time
on an inmate as a result of a disciplinary proceeding. [139-140]
Plaintiff inmates of a jail and house of correction were entitled to sum-
mary judgment as a matter of law on their claims that county authori-
ties violated the plaintiffs' right to due process in imposing disciplinary
isolation without the procedural safeguards required under *Wolff* v.
*McDonnell*, 418 U.S. 539 (1974), where there was no dispute that the
*Wolff* procedures were not followed. [140]
Inmates of a jail and house of correction seeking damages for violation of
their due process rights were barred from recovery against the Commis-
sioner of Correction personally by the commissioner's qualified immu-
nity, where the plaintiffs failed to show that the commissioner had any
personal involvement in the violations or that he intentionally failed to
fulfil his statutory duties. [140-144]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 2, 1985.

---

[1]William Moore.

[2]The superintendent and three named employees of the Worcester
County jail and house of correction, the commissioners of Worcester
County, the treasurer of Worcester County, the former Commissioner of
Correction, Michael Fair, and the county of Worcester.

Motions for summary judgment were heard by *Charles F. Barrett*, J., and entry of partial summary judgment was ordered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael A. Gray* for the Sheriff of Worcester County & others.

*Michael H. Cohen* for Michael Fair.

*Peter Costanza* for the plaintiffs.

NOLAN, J. While serving their sentences in the Worcester County jail and house of correction (jail), the plaintiff inmates filed a complaint in Superior Court on August 2, 1985, against the county of Worcester, several county officials and Michael Fair. The complaint alleged that during several disciplinary actions county officials violated the plaintiffs' constitutional right to due process of law.[3] The parties filed cross motions for summary judgment. On November 4, 1991, a judge in the Superior Court issued a memorandum and order granting summary judgment to the plaintiffs on the issue of liability but denying declaratory relief.[4] The judge also ruled that the then Commissioner of Correction (Commissioner), Michael Fair, was liable individually for damages. The defendants' motions for summary judgment were denied. With the amount of damages yet to be resolved, partial summary judgment for the plaintiffs was entered on November 25, 1991. The defendants petitioned a single justice of the Appeals Court for leave to pursue an interlocutory appeal from judgment of the Superior Court. G. L. c. 231, § 118 (1990 ed.). On December 11, 1991, the single justice granted the defendants' petition. We transferred the case to this court on our own motion. We now affirm summary judgment for the plaintiffs as to liability for violations of due process, but reverse the judgment against Michael Fair individually.

---

[3]The complaint also purports to represent the claims of all inmates at the jail. The plaintiffs, however, never moved for class certification.

[4]The plaintiffs do not appeal from the denial of declaratory relief.

The material facts of this case are undisputed. Between July, 1983, and July, 1985, the inmates were subjected to a total of ten disciplinary proceedings at the jail, which they claim were conducted in violation of their due process rights. The inmates did not receive advance written notice of the hearings. In none of the proceedings was the inmate given a copy of the decision of the disciplinary board (board). Instead, the inmates were allowed to read it, but not to take a copy.[5] In all ten proceedings, the board imposed disciplinary isolation, but in only one case was an inmate (Moore) actually confined to an "isolation cell." Under the regulations, when the board imposed isolation as a disciplinary sanction, the inmate could be locked up in his own cell, placed in a special isolation unit within the jail known as the "county lockup," or sent to an isolation cell known as the "Hole."[6] The plaintiffs assert that they spent twenty-three hours a day in isolation as a result of disciplinary sanctions. As to qualitative differences between an isolation cell and lockup, in an isolation cell the inmate is left with only his underwear and a Bible whereas in the lockup situations only the inmate's television is removed.

During the period at issue, the jail's written regulations failed to provide an inmate with either twenty-four hours advance notice of a disciplinary proceeding or a written copy of the board's findings and decision. The regulations of the Department of Correction (department), issued by the Commissioner, provided, inter alia, that an inmate "be informed of the violation he is charged with by copy of the [incident] report," and "be advised in writing of the decision" which shall include "a description of the evidence relied upon by the board . . . and a statement of the reasons for the sanction(s)

---

[5]In at least one instance, the board's decision recited neither the board's findings nor the reason for the sanction imposed.

[6]The jail's disciplinary procedures were recorded in the Worcester County Jail & House of Correction Policy Manual and the Worcester County Jail & House of Correction Information Handbook for Inmates. New policies took effect in 1990.

imposed." 103 Code Mass. Regs. § 943.03 (1) and (6) (1979).

During this same period, the department conducted inspections of the jail twice each year as required by G. L. c. 127, § 1B (1990 ed.). In each report, the inspection team certified that Worcester County's disciplinary procedures were in compliance with the Commissioner's regulations.

Addressing the defendants' appeal, we note first that "[a]n order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992). Because the parties to this case do not contest any material facts, we review the trial judge's decision to determine whether the plaintiffs were entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *One 1987 Mercury Cougar Auto, supra.*

1. *Due process.* The judge concluded that *Wolff* v. *McDonnell*, 418 U.S. 539 (1974), and its progeny require certain procedural safeguards when disciplinary isolation is imposed. Because these safeguards were not followed in the ten disciplinary proceedings involving O'Malley and Moore, the judge found a violation of their constitutional right to due process. This conclusion, we hold, was correct as a matter of law.

In Massachusetts, as in every other State, prison inmates are protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *Wolff, supra* at 556, and cases cited. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555-556. Prisoners, therefore, "may not be deprived of life, liberty, or property without due process of law." *Id.* The procedural protections of due process apply, however, only if there is an existing liberty or property interest at stake. *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 571 (1972). The plaintiffs argue that they have a valid liberty interest in avoiding disciplinary isolation. To determine if this constitutes a protected entitlement, we look first to Federal due

process and then to State law. *Hewitt* v. *Helms*, 459 U.S. 460, 466 (1983).

The United States Supreme Court has held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye* v. *Haymes*, 427 U.S. 236, 242 (1976). Thus, the *Montanye* Court found that the transfer of inmates between State prisons did not implicate a liberty interest inherent in the due process clause. *Id.* See also *Meachum* v. *Fano*, 427 U.S. 215, 226-227 (1976). Similarly, we have recognized that administrative segregation does not involve a federally protected liberty interest because it "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Real* v. *Superintendent, Mass. Correctional Inst., Walpole*, 390 Mass. 399, 407 (1983), vacated sub nom. *Ponte* v. *Real*, 471 U.S. 491, *S.C.*, 396 Mass. 1001 (1985), quoting *Hewitt, supra* at 468. The United States Supreme Court has also rejected "the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause," because that "would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts" (emphasis in original). *Parenti* v. *Ponte*, 727 F.2d 21, 23 (1st Cir. 1984), quoting *Meachum, supra* at 224-225. Given these precedents, we discern no Federal liberty interest regarding disciplinary isolation.[7]

---

[7]The United States Supreme Court has also held that the Federal due process clause does not create a protected liberty interest in confinement to a general population cell, *Hewitt* v. *Helms*, 459 U.S. 460, 466-467 (1983), nor does it guarantee "unfettered visitation." *Kentucky Dep't of Corrections* v. *Thompson*, 490 U.S. 454, 460 (1989). From such precedents, the Court of Appeals for the First Circuit concluded that "the due process clause does not in and of itself guarantee any particular confinement status to a duly convicted prison inmate." *Parenti* v. *Ponte*, 727 F.2d 21, 23 (1st Cir. 1984).

A State may also create a protected liberty interest by placing "substantive limitations on official discretion." *Olim* v. *Wakinekona*, 461 U.S. 238, 249 (1983).[8] To find these substantive limitations we look to the language of the statute that governs the conduct at issue. *Kentucky Dep't of Corrections* v. *Thompson*, 490 U.S. 454, 461 (1989). We have acknowledged that Massachusetts regulations containing "explicitly mandatory language in connection with requiring specific substantive predicates" can create protected liberty interests. *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole*, 390 Mass. 409, 417 (1983), quoting *Hewitt, supra* at 472. The regulations of the department state explicitly that "[a]n inmate may be placed in isolation only pursuant to a sanction imposed by a disciplinary board" and only after the inmate's appeal has been decided or waived. 103 Code Mass. Regs. § 430.20 (1978). Additionally, those sections of the regulations pertaining to county correctional facilities provide that "[n]o inmate shall be placed in disciplinary isolation to [*sic*] compliance with the procedures set forth in 103 CMR 943.03." 103 Code Mass. Regs. § 943.05 (1) (1979). The procedures in § 943.03 require, inter alia, that prison authorities provide inmates with notice of charges, an opportunity to be heard at a hearing before a disciplinary board, a conditional opportunity to present evidence, and review of a written decision including reasons for any sanctions imposed, as well as a right of appeal. The language is mandatory, not permissive. Thus, these regulations make clear that isolation may not be imposed arbitrarily or at the unbridled discretion of prison officials.[9] We hold,

---

[8]The United States Supreme Court has recognized liberty interests created by State law and enforceable by prison inmates in such areas as parole, *Board of Pardons* v. *Allen*, 482 U.S. 369 (1987); good-time credits, *Wolff* v. *McDonnell*, 418 U.S. 539, 556-572 (1974); involuntary transfer to a mental hospital, *Vitek* v. *Jones*, 445 U.S. 480, 487-494 (1980), and administrative segregation, *Hewitt, supra* at 472.

[9]Generally, "[i]f the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' . . . the State has not created a constitutionally protected liberty interest." *Parenti,*

therefore, that these regulations bestow on inmates a protected liberty interest in avoiding disciplinary isolation.

Once a liberty interest has been established, a court must next determine what procedural safeguards are necessary to satisfy the requirements of due process. *Thompson, supra* at 460. Under *Wolff*, a prisoner facing a disciplinary proceeding that may result in the loss of a liberty interest must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present evidence in his defense; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Inst. at Walpole* v. *Hill*, 472 U.S. 445, 454 (1985), citing *Wolff, supra* at 563-567. The defendants argue that, even if inmates do have a protected liberty interest in avoiding disciplinary isolation, that interest does not require the protections detailed in *Wolff* which are necessary only in cases involving forfeiture of "good time credits."[10] They maintain that a flexible balancing approach, such as applied in *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976), is the more appropriate standard for disciplinary isolation cases.[11] We disagree.

Applying the *Mathews* balancing test, the *Hewitt* Court held that, in the case of administrative segregation of inmates, due process is satisfied by "an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wished to submit, within a reasonable time after con-

_____

*supra* at 23, quoting *Olim* v. *Wakinekona*, 461 U.S. 238, 249 (1983). With regard to prison transfers, no enforceable liberty interest is created if a State law does not limit the discretion of prison authorities to specific instances of misconduct or other such event. *Meachum* v. *Fano*, 427 U.S. 215, 226-227 (1976). *Montanye* v. *Haymes*, 427 U.S. 236, 242 (1976).

[10]For periods of good conduct or "good time," inmates may earn reductions in the term of their imprisonment. G. L. c. 127, § 129 (1990 ed.).

[11]In *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976), the Court balanced the private interests at stake, the governmental interests involved, and the value of the procedural requirements in determining what process is due under the Fourteenth Amendment.

fining him to administrative segregation." *Id*. at 472. Indeed we have also upheld administrative segregation procedures in reliance on the *Hewitt* analysis. *Lamoureux, supra* at 417. This case, however, involves disciplinary isolation, not administrative segregation. As Justice Marshall noted in *Wolff*:

> " 'solitary' confinement . . . represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. Here, as in the case of good time, there should be minimum procedural safeguards . . . . We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges." *Supra*. at 571-572 n.19. *Supra*. at 581 n.1 (Marshall, J., concurring in part and dissenting in part).

More recently, the United States Court of Appeals for the First Circuit held that a prisoner who faces the risk of isolation time is entitled to the procedural protections set forth in *Wolff*. *Smith* v. *Massachusetts Dep't of Correction*, 936 F.2d 1390, 1399 (1st Cir. 1991). See *Parenti, supra* at 25. We find this reasoning to be persuasive. Isolation, regardless of location, entails much more than the simple loss of privileges such as television viewing; it involves a significant loss of freedom, opportunity for exercise or earning good time credits, as well as contact with visitors and others. Distinguishing administrative segregation from disciplinary isolation, the United States Supreme Court recognized that the latter carries with it a "stigma" of misconduct that taints the inmate's reputation and affronts his dignity. *Hewitt, supra* at 473. In addition, the department's regulations themselves prohibit disciplinary isolation except as a "[m]ajor" sanction. 103 Code Mass. Regs. § 430.23 (3) (a) (1978). "Minor sanctions" include the loss of privileges or room restrictions. 103 Code Mass. Regs. § 430.23 (1) (1978). See 103 Code Mass. § 430.10 (1978). We hold, therefore, that, when prison au-

thorities may impose isolation time on an inmate as the result of a disciplinary proceeding, they must follow the procedures outlined in *Wolff* to satisfy the inmate's due process rights. In this case the defendants do not dispute that the procedures employed in the ten disciplinary proceedings against the plaintiffs failed to comply with those outlined in *Wolff*; consequently, the plaintiffs were entitled to judgment as a matter of law.[12]

2. *The Commissioner's liability.* This court has never squarely addressed the issue of the Commissioner's liability for damages under 42 U.S.C. § 1983 (1988). See *Hoffer* v. *Commissioner of Correction*, 412 Mass. 450, 453 n.5 (1992) (only amount of damages at issue); *Blake* v. *Commissioner of Correction*, 403 Mass. 764, 766 n.3 (1989) (liability for damages not contested); *Blake* v. *Commissioner of Correction*, 390 Mass. 537 (1983) (equitable relief available). At trial the defendant, Michael Fair, former Commissioner of Correction, moved for summary judgment on the issue of his liability for violations of plaintiffs' due process rights. The judge denied Fair's motion and found him liable for damages. Fair now argues that the trial judge's ruling was in error. He charges, first, that there is no factual basis for his liability, and second, that damages cannot be awarded in this case because the plaintiffs' claim was not asserted against Fair in his individual, as opposed to his official, capacity. We agree.

The judge was correct in concluding that the Commissioner can be held liable under § 1983 for depriving the plaintiffs of their Federal constitutional rights. *DiMarzo* v. *Cahill*, 575 F.2d 15, 17 (1st Cir. 1978), citing *Inmates of Suffolk County Jail* v. *Eisenstadt*, 494 F.2d 1196, 1199 (1st Cir.), cert. denied, 419 U.S. 977 (1974). See *Richardson* v. *Sheriff of Middlesex County*, 407 Mass. 455, 469-471 (1990). The judge erred, however, in ruling that the Com-

---

[12]Specifically, in each instance the plaintiffs were not given notice of the charges twenty-four hours before the disciplinary proceeding was conducted, nor were they given a written statement of the board's decision. See *Wolff*, *supra* at 564.

missioner is liable for damages. If a State official is sued in his official capacity, then the plaintiffs' recovery is limited to equitable relief only. *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). *Kentucky* v. *Graham*, 473 U.S. 159, 170 (1985).[13] Monetary damages against State officials are available only if they are sued in their individual or personal capacities for actions under color of State law. *Hafer* v. *Melo*, 502 U.S. 21, 23-24 (1991).

In this case, nothing in the record indicates that Fair was sued in his individual or personal capacity. The complaint is void of any reference to Fair other than in his official capacity. Moreover, at trial the judge appears to have ruled that Fair was sued in his capacity as Commissioner even though the plaintiffs argued otherwise.[14] On appeal, the plaintiffs no longer contest that Fair was sued in his official capacity. Rather, they appear to argue in their brief that Fair is personally liable for damages even when sued in his official capacity.[15] This claim, we conclude, is based upon a misreading of the case law.

As discussed above, State officials are liable for damages only if they are sued in their individual or personal capacities. Plaintiffs cite to *Hafer* for the proposition that Fair may

---

[13]"[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Will* v. *Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), quoting *Kentucky* v. *Graham*, 473 U.S. 159, 167 n.14 (1985). On the other hand, State officials sued for damages in their official capacity are not "persons" under § 1983 because the law treats the action as against the official's office and hence against the State. *Hafer* v. *Melo*, 502 U.S. 21, 25 (1991), citing *Will*, *supra* at 71. Therefore, to avoid a State's sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity. *Hafer*, *supra*.

[14]The trial judge ruled that "the course of the litigation indicates that plaintiffs seek to impose liability on Fair for actions he took which were in the name of and for the Commonwealth in his capacity as Commissioner of Corrections," citing *Graham*, *supra* at 167.

[15]The trial judge found that "Fair, as Commissioner of Corrections, is a proper defendant in this case and he may be liable for damages to plaintiffs."

be held personally liable for damages based on actions taken in his official capacity. Plaintiffs fail to recognize, however, that *Hafer* also reaffirmed the decision in *Will* that State officials acting in their official capacities are not "persons" subject to personal liability under 29 U.S.C. § 1983. *Supra* at 360. Thus, the rule, properly stated, is that State officials may be held personally liable for damages because of actions taken in their official capacities only if they are sued in their individual capacities. *Hafer, supra* at 362-363 (liability turns on capacity in which State officials are sued, not on capacity in which they acted when injuring plaintiff).

Regardless of whether Fair was sued in his individual or official capacity, recovery may still be barred by the officials' qualified immunity. *Graham, supra* at 166-167. This qualified immunity is based on the defendants' personal defenses and not those of the government agency. *Hafer, supra* at 362. To overcome the defendants' qualified immunity, the plaintiffs must show that the defendants directly participated in violating the plaintiffs' "clearly established" rights. *Anderson* v. *Creighton*, 483 U.S. 635, 640 (1987) (plaintiffs' rights must be clearly established so that a "reasonable official" would understand that his actions violate those rights). *Rizzo* v. *Goode*, 423 U.S. 362, 371 (1976) (law requires sufficient association between supervisors and unlawful policy or program for injunctive relief). *Kostka* v. *Hogg*, 560 F.2d 37, 40 (1st Cir. 1977) (to negate official immunity, plaintiffs must establish bad faith participation in the wrongdoing). The defendant must have acted "either outside the scope of his respective office, or if within the scope, [he] acted in an arbitrary manner, grossly abusing the lawful powers of his office." *Scheuer* v. *Rhodes*, 416 U.S. 232, 235 (1974). See, e.g., *Naughton* v. *Bevilacqua*, 605 F.2d 586, 589 n.5 (1st Cir. 1979) (plaintiffs unable to recover damages against director of medical institution under § 1983 because they failed to allege his personal involvement).

We hold that, as a matter of law, the plaintiffs' allegations do not defeat the Commissioner's qualified immunity. First, the plaintiffs failed to show that the Commissioner had any

personal involvement in the constitutional violation. He was neither a member of the disciplinary board nor part of the inmates' appeal process. Second, the plaintiffs offered no evidence that the Commissioner intentionally failed to fulfil his statutory duties. To the contrary, the record reveals that he established minimum rules and standards in compliance with statutory regulations and conducted inspections of the jail to ensure its compliance with minimum standards. See G. L. c. 124, § 1 (*d*) and (*q*) (1990 ed.); G. L. c. 127, §§ 1A and 1B (1990 ed.). Although the Commissioner did not inspect the facility personally, his agents, pursuant to regulations, reported to him that Worcester's disciplinary procedures satisfied the department's minimum standards. Thus, there is nothing in the record before us which shows Fair had personal knowledge that authorities at the jail had denied the plaintiffs' due process rights. Moreover, he had no duty to investigate further. Cf. *King* v. *Higgins*, 702 F.2d 18, 20-21 (1st Cir. 1983) (prison superintendent who, after receiving disciplinary board reports, failed to investigate possible constitutional violations is liable for damages under § 1983 because, as the official designated to hear prisoners' appeals, he had a further duty to investigate merits of plaintiff's appeal); *Hafer*, *supra* at 360-361 (newly elected Auditor General who personally dismissed her employees because they allegedly secured their jobs by bribery may be liable for damages under § 1983). We conclude, therefore, that there is no factual predicate shown here that supports the plaintiffs' claim for damages against the Commissioner.

The United States Court of Appeals for the First Circuit held that, where a plaintiff seeks *equitable relief*, failure to fulfil a statutory mandate renders the Commissioner of Correction a proper party defendant, and a court may order the Commissioner to maintain constitutional standards. *DiMarzo*, *supra* at 17. Extrapolating from this decision, the plaintiffs argue that, since the Commissioner had a statutory duty to promulgate minimum standards for county correctional facilities, the failure of those standards to pass constitutional muster also renders the Commissioner personally lia-

ble for *damages*.[16] We disagree. As discussed above, different rules apply when damages are sought. A plaintiff must first sue the State official in his individual capacity and then overcome any qualified immunity defense. Here, not only does the Commissioner's conduct fall far short of active participation, but it is precisely the type of conduct, performance of official duties, for which qualified immunity exists. If State officials were held personally liable for *damages* every time regulations that they issued or enforced pursuant to statute were found to violate the Federal Constitution, only the most fearless among them would dare to fulfil their duties. Hence, we conclude on the facts before us that the Commissioner is not personally liable to the plaintiffs for damages.[17]

For these reasons, we affirm summary judgment for the plaintiffs as to liability for due process violations, but reverse the judgment as to Michael Fair's liability for damages. We remand the case for determination of the amount of damages for which the remaining defendants are liable.

*So ordered.*

[16] The department's regulations provide for twenty-four hour notice before a disciplinary hearing as required by *Wolff, supra* at 564, but fail to require that the inmate be given a written record of the Board's decision. 103 Code Mass. Regs. 943.03 (3) and (6) (1979). As written, the County Facility Regulations, 103 Code Mass. Regs. 430.00 et seq. (1978) and the jail's policies required neither twenty-four hour notice nor delivery of a written decision.

[17] It is worth noting that, even if the Commissioner had participated directly in the constitutional violation, one might argue that he could not reasonably have known that the department's regulations regarding disciplinary isolation created a protected liberty interest. Unless the plaintiffs' protected liberty rights were "clearly established" so that the Commissioner would have understood that his conduct violated those rights, he cannot be held liable. See *Anderson* v. *Creighton*, 483 U.S. 635, 640-641 (1987) (Fourth Amendment context). However, since we conclude that the Commissioner was not directly involved, we do not reach this issue.