Cratsley, J.
INTRODUCTION
Plaintiff Ernest Henderson and plaintiff Evelyn Murphy’s decedent William Murphy were incarcerated in the Barnstable County jail. Their separate claims challenge the procedure by which the defendants revoked statutory good time credits that would have been applied to their sentences. The underlying facts are not in dispute, and both sides, plaintiffs and county officials, have moved for summary judgment as to liability in each case. In the Murphy case the state defendant, Larry DuBois, Commissioner of the Department of Correction, has also moved for summary judgment.
BACKGROUND
1. Henderson
On February 18, 1993 plaintiff Ernest Henderson (“Henderson”) began his term of incarceration at the Barnstable County Jail (“the Jail”) pursuant to a two and one-half year sentence. While serving his sentence, Henderson earned a substantial amount of so-called “statutory good time” pursuant to G.L.c. 127, §129.[1] According to prison officials’ calculations, his statutory and “earned” good time credits (the latter of which he earned by working and attending school in jail pursuant to c. 127, §129D) had advanced his scheduled release date from the maximum of August 19, 1995 to September 24, 1994.
On July 29, 1994 Henderson was asked to submit a urine specimen which subsequently “tested positive,” apparently for the presence of illegal drugs. He was therefore charged with two violations of the Barnstable County House of Correction Handbook, Code of Offenses:
... 2. Violating any departmental rule or regulation, or any other rule, regulation, or condition of [the] facility . . .
10. Manufacture, possession, introduction or use of any unauthorized controlled substance, alcoholic beverage or associated paraphernalia . . .
On August 4, 1994 a disciplinary hearing regarding these charges was conducted by Disciplinary Officer Thompson. Officer Thompson found Henderson guilty of both counts, and sentenced him to a punishment of 20 days in “B-section” (apparently meaning solitary confinement), with 15 of those days to be actually served and 5 suspended. This punishment was filed in a writing and signed by Officer Thompson. No other sanction for failing the drug test was mentioned on the form.
Henderson did not appeal this punishment. Independently, on August 10, 1994, the Barnstable County Commissioners met and voted, “upon the recommendation of Lt. Col. James M. Fredericks, Superintendent of the Barnstable County Jail/House of Correction,” to revoke 127 days of Henderson’s accumulated statutory good time and restore those days to his sentence. On August 30, 1994 the Jail informed Henderson that his new expected release date was May 13, 1995.[2] On October 11, 1994 Henderson filed the instant action seeking declaratory and injunctive relief as well as damages. That same day the Jail released him, concededly in an attempt to moot the issues raised by his lawsuit.
2. Murphy
Plaintiff Evelyn Murphy’s decedent William Murphy (“Murphy”) underwent a process similar to that experienced by Henderson. Murphy was sentenced on July 28, 1992 to a total of one year, seven months, and nineteen days in jail for possession of a controlled substance and probation violations. His maximum release date, according to jail officials, was February 21, 1994. Statutory good time credits pursuant to c. 127, §129 advanced this release date to November 18, 1993. Earned good time credits advanced it even farther, to September 22, 1993. On July 10, 1993, Murphy received a two-day furlough from the Barn-stable County House of Correction. Upon his return to the jail on July 12, he was required to submit a urine specimen to be tested for drugs. The specimen “tested *2 negative.” The next day, he was asked to give another specimen, which “tested positive.” Murphy was placed in solitary confinement and charged with violating four provisions of the jail Handbook:
1. Disobeying an order of, lying to or insolence toward a staff member. 2. Violating any departmental rule or regulation, or any other rule, regulation or condition of [the] facility ... 10. Manufacture, possession, introduction or use of any unauthorized controlled substance, alcoholic beverage or associated paraphernalia ... 12. Refusal to . . . provide a urine specimen . . .
In a hearing before a disciplinary officer, Murphy was sentenced to a total of twenty days in solitary confinement. He did not appeal this penalty. Then, on July 28, 1993, the Barnstable County Commissioners,
upon the recommendation of Supt. James M. Fred-ericks of the Jail and House of Correction . . . ordered that William Murphy lose 60 days accumulated statutory good time from his sentence for violation of the rules of the House of Correction.
Murphy was then.released on October 6, 1993.[3] On February 17, 1994, Murphy died, the apparent victim of a drug overdose.
DISCUSSION
The two plaintiffs argue that the procedure by which Barnstable County revoked their statutory credits violates the statutory and regulatory scheme of the Commonwealth and Barnstable County, as well as the federal constitution. This Court will address these claims in turn.
1. Statutory Claims
To understand these claims it is necessary to understand the statutory and regulatory scheme itself. G.L.c. 127, §129, the now-repealed provision that governed the statutory good-time credit scheme, provided automatic sentence reductions for “[e]very such prisoner whose record of conduct shows that he has faithfully observed all the rules of his place of confinement, and has not been subjected to punishment...” Crucial to this case is the portion of the statute that governs the procedure for revoking a prisoner’s credits in response to a disciplinary violation while in jail. That portion provides, in relevant part,
[i]f a prisoner violates any rule of his place of confinement . . . the county commissioners . . . upon the recommendation and evidence submitted to them ... in writing by the principal officer, or officer in charge, shall decide what part, if any, of such good conduct deduction from sentence or sentences shall be forfeited by such violation, and may likewise determine, in the event of the prisoner’s subsequent good conduct, whether any or all of such deduction shall be restored.
Pursuant to G.L.c. 124, §§1(d) and 1(q), and c. 127, §§1A and 1B, the state Commissioner of Correction promulgated a series of regulations governing, among other things, the revocation of c. 127, §129 good time credits at county jails. See 103 CMR 943.00 (County Correctional Facilities — Inmate Rules and Discipline). The general disciplinary procedure involves a hearing “conducted by an impartial hearing Officer.” 103 CMR 943.06(2). A variety of sanctions are available, among them forfeiture of statutory good time credits, but apparently the hearing officer can only “recommend []” such a forfeiture. 103 CMR 943.08(2)(e). C. 127, §129 authorizes only the county commissioners actually to implement the forfeiture.
103 CMR 943.01 delegates substantial regulatory authority to the county jails themselves. That subsection provides,
(1) The facility shall develop and implement a written plan for inmate discipline. The plan shall include, but not be limited to, the following elements:
(a) rules of inmate conduct and penalties for violation:
(b) detection and reporting of offenses;
(c) disciplinary procedures and hearing;
(d) placement in detention in awaiting action status;
(e) sanctions; and,
(i) appeal process.
Pursuant to this regulatory provision, Barnstable Couniy has promulgated its Inmate Handbook, which contains a section entitled “Discipline”’ Under the regulations outlined in the Handbook, the hearing officer who initially adjudicates charges of inmate misconduct is known as the Disciplinary Officer, who is part of an entity called the Disciplinary Board. Officer Thompson, who initially sentenced plaintiff Henderson to fifteen days in solitary confinement, was such a Disciplinary Officer. Sanctions available to the Disciplinary Officer and the Disciplinary Board (both of which are empowered to adjudicate charges of inmate misconduct) include “recommended good time forfeiture.” According to the Handbook, decisions of the Disciplinary Officer, or the Board, may be
appealed] ... to the Sheriff, or in the absence of the Sheriff, the Deputy, within five (5) working days following the inmate’s receipt of the Board’s written decision ... [t]he Sheriff, or Deputy may, within two (2) working days of receipt of the appeal, may [sic] reduce or suspend the decision made by the Board, but may not, in any event, increase the sanction given by the Board. (Emphasis added.)
Finally, the Handbook provides that “[fiorfeiture of statutory good time credits must be reviewed and approved by the facility administrator and the County Commissioners.” The obvious implication is that the County Commissioners are merely to review any recommended forfeiture of good time credits, not to impose such a forfeiture sua sponte. This conclusion ' bolstered by the language of c. 127, §129 itself, whi authorized the county commissioners to revoke goc time credits “upon the recommendation and eviden *3 submitted to them ... in writing by the principal officer, or officer in charge,” by whom is presumably meant the hearing officer — in Barnstable County, the Disciplinary Officer.
The clear import of the regulatory scheme as a whole is that, although the forfeiture of statutoiy good time credits can only be accomplished by vote of the County Commissioners, such a vote may only take place after a hearing in which the Disciplinary Officer recommends forfeiture, incorporates that recommendation in writing in his or her decision, and provides a statement of the evidence relied on and the reasons for the sanction, all as the Handbook requires. In the instant case, by contrast, forfeiture of good time credits was not referred to by either of the disciplinary officers who adjudicated the charges against the plaintiffs, and neither plaintiff appealed the rulings of the respective disciplinary officers. The County Commissioners, on their own initiative, without the required recommendations from the disciplinary officers involved and without any notice to the plaintiffs, revoked nearly two hundred days of statutory credits to their sentences. The regulations contained in the Barnsta-ble County Inmate’s Handbook, promulgated pursuant to statutoiy authority, have the force of law. “Once an agency has seen fit to promulgate regulations, it must comply with those regulations. Agency regulations have the force of law.” Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983) (internal quotation marks and citations omitted). “(I)ndividuals within [an] agency may not arbitrarily disregard agency regulations to the prejudice of a party’s rights.” Kenney v. Commissioner of Correction, 393 Mass. 28, 33 (1984) (citation omitted). The Barnstable County Commissioners may not disregard the procedural restrictions contained in their own regulations.
2. Constitutional Claims
Henderson and Murphy have also brought claims under 42 U.S.C. §1983, alleging that the county defendants deprived them of their right to due process under the Fourteenth Amendment of the U.S. Constitution. This claim is especially important to the plaintiffs because 42 U.S.C. §1983 is the only authority under which they have claimed the right to compensatory damages.
Liability under §1983 arises whenever a person acting under color of state law, deprives another of any rights guaranteed under the laws or the Constitution of the United States. In the instant case, the undisputed facts demonstrate that the county defendants deprived Henderson and Murphy of their rights to procedural due process under the Fourteenth Amendment. In Wolff v. McDonnell, 418 U.S. 539 (1974), the U.S. Supreme Court held that a constitutionally protected liberty interest is implicated when a state prisoner’s statutoiy good time credits are revoked. The Court ruled that the due process clause requires certain procedural safeguards to protect that liberty interest:
[w]e hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare— [w]e also hold that there must be a ‘written statement by the factfinders as to the evidence relied on and reasons’ for the disciplinary action.
418 U.S. at 565 (citations omitted). These requirements were not met in the instant case. Both plaintiffs’ good time credits were revoked sua sponte by the County Commissioner without any notice. Far from being given any warning or opportunity to present a defense of any kind, the plaintiffs were instead peremptorily informed, after the decision had been made, that their good time credits had been taken away. No written statement of the reasons for the decision, or of the evidence relied upon, was ever provided. These actions violated the plaintiffs’ rights to procedural due process. The plaintiffs are therefore entitled to summary judgment against the county defendants on their §1983 claims.
3. Claims Against the State Commissioner of Corrections
In the Henderson case, Civil Action 94-5491-C, the state defendant, Larry DuBois, Commissioner of the Department of Correction, and the plaintiff have entered into a settlement agreement approved today by this Court at the same time this opinion is issued. That settlement agreement calls for the state defendant to enforce compliance at the Barnstable County House of Correction with a forfeiture procedure for statutory good conduct deductions consistent with the text of this opinion — i.e., “only pursuant to a written recommendation from a disciplinary board or hearing officer that a specified number of days may be forfeited as a sanction for misconduct.”
In the Murphy case, Civil Action 93-7315-C, the state defendant, Commissioner DuBois, has moved for summary judgment. No settlement has been reached with respect to Murphy’s claims against DuBois. Murphy has sued DuBois in his official capacity as state Commissioner of Correction and in his individual, or personal, capacity. Murphy claims that DuBois violated his statutoiy duty as Commissioner, under G.L.c. 124, §l(d), to ensure compliance by county correctional facilities with statutory, regulatory, and constitutional law. Murphy concedes that in his official capacity DuBois is only subject to equitable remedies, such as declaratory or injunctive relief. See O’Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 (1993). However, as the statutory and constitutional violations involved in this case were committed by Barnstable County officials, and there is no evidence that DuBois failed to perform his own statutory *4 duties, Murphy is not entitled to a declaratoiy judgment or an injunction against him.
DuBois is subject to suit for damages in his personal capacity, but he is also protected in such a suit by the doctrine of qualified immunity. To hold DuBois personally liable for the statutory and constitutional violations that occurred at the Barnstable County Jail, Murphy would need to demonstrate that DuBois “had a[] personal involvement in the constitutional violation” or that he “intentionally failed to fulfil his statutory duties.” O’Malley, 415 Mass. at 142-43. In O’Malley, the Supreme Judicial Court ruled that the Commissioner of Correction could only be held liable for violations occurring at a county jail if he “had personal knowledge that authorities at the jail had denied the plaintiffi’s] due process rights.” Id. at 143. Murphy has presented no evidence to suggest this is the case. In fact, the only materials available to the Court on this issue indicate that DuBois’s office inspected the Barnstable County Jail twice in 1993, the year at issue. DuBois is therefore entitled to summary judgment against Murphy.
ORDER
Each plaintiffs motion for partial summary judgment as to liability is hereby ALLOWED as to the county defendants. The county defendants’ motions for summary judgment are DENIED. The motion of the state defendant DuBois, Commissioner of the Department of Correction, for summary judgment is ALLOWED in the Murphy case, Civil Action 93-7315-C. It is hereby ORDERED that a declaratory judgment enter, declaring the county defendants’ actions in revoking plaintiffs statutory good time credits unlawful and unconstitutional.
Plaintiffs’ counsel may apply to the Court, with proper notice to opposing counsel, for a further hearing on such issues as (1) separate and final judgment pursuant to Rule 54(b), Mass.R.Civ.P., (2) damages, and (3) attorneys’ fees. Defendants’ counsel, with similar notice, may file such post summary judgment motions and/or oppositions as appropriate.

 C. 127, §129 was repealed by the legislature on July 1, 1994; it remained in effect as to offenses committed before that date. It therefore applied to both Henderson’s and Murphy’s sentences at all times relevant to this lawsuit.

On July 15, 1994, prison officials had informed Henderson that his “out date” was scheduled to be September 24, 1994. On August 30, 1994, subsequent to the County Commissioners’ vote to revoke Henderson’s statutory good time, officials told him his “wrap-up” date would be May 13, 1995. May 13, 1995 is 231 days later than September 24, 1994, a fact that suggests the County Commissioners not only revoked 127 days of Henderson’s statutory good time credits, but also his 102 days of earned good time, even though the latter was never mentioned in the Commissioners’ order of August 10. Henderson has not raised this issue, however, and this Court will therefore address it no further.

On July 29, 1993, Murphy was transferred from the Barnstable to the Bristol County House of Corrections. The reason for this transfer does not appear in the record, and is not important for the purposes of this case.