NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-185
23-P-991

EDWARD G. WRIGHT

vs.

THOMAS TURCO, THIRD, & others[1] (and a companion case[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

These matters generally concern the Department of

Correction's (DOC or department) implementation of a "Standard

Operating Procedure" (SOP) for processing inmate mail.  Because

the two matters raise substantially identical issues, we have

considered them together, ultimately concluding that there

exists no basis on which to disturb the summary judgments

dismissing the plaintiffs' complaints.  We commence with a

---

[1] Steven Silva and Nelson Alves.

[2] Tony B. Gaskins, Jeffrey Britto, Terry Carter, Phillip Rise, Michael Hunter, and Derrick Daniels vs. Thomas Turco, Third, and Stephen Kennedy.  As discussed infra, of the named plaintiffs only Tony Gaskins remains a participant in this appeal.

discussion of the captioned case, reserving additional comments pertaining to the companion case for later discussion.

The captioned case. The plaintiff, Edward G. Wright, is an inmate in the custody of the department. He brought this action under 42 U.S.C. § 1983 in connection with the department's SOP. The SOP provides for the opening and then photocopying of nonprivileged incoming mail addressed to prison inmates at medium security and maximum security prisons. Wright asserts that the SOP violates his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and seeks monetary damages from three prison officials in their individual capacities, Thomas A. Turco, III, the former Commissioner of Correction, Stephen Silva, the former Superintendent of the Souza-Baranowski Correctional Center (SBCC) and the Massachusetts Correctional Institution at Norfolk (MCI-Norfolk), and Nelson Alves, the former Director of the Policy Development and Compliance Unit and current Superintendent of MCI-Norfolk.[3] On cross motions for summary

---

[3] This case has an extensive procedural history. For our purposes it is sufficient to note the following. In 2018, Wright and others brought an action seeking declaratory and injunctive relief against the implementation of the SOP described above (the 2018 case). Wright claimed that the SOP violated the Constitution of the United States and had been adopted without complying with the Administrative Procedures Act (APA), G. L. c. 30A, §§ 1-5. A different judge of the Superior Court entered judgment in favor of Wright on the latter ground. The SOP at issue has since been promulgated in accordance with

2

judgment, a judge of the Superior Court concluded that the defendants did not violate Wright's constitutional rights and, alternatively, even if a violation occurred, the defendants were entitled to qualified immunity. Consequently, the judge allowed the defendants' motion for summary judgment and denied Wright's cross motion. Wright appeals.

1. Background. We summarize the undisputed facts from the record as follows. In an effort to reduce the smuggling of drugs into correctional facilities, the department implemented changes to the manner in which it processed inmate mail. On May 5, 2017, the DOC promulgated a regulatory amendment to 103 Code Mass. Regs. § 481.00 (2017), which provided in pertinent part:

> "All incoming non-privileged correspondence and packages
> may be required to successfully pass a fluoroscope
> examination for contraband materials, and shall be opened
> and inspected before delivery to the inmate. The purpose
> of inspection will be to receive and receipt any funds
> enclosed for the inmate; to verify and record the receipt
> of permitted personal property; and to prevent the
> transmission of contraband to the inmate. If there is

the APA. Shortly after Wright prevailed in the 2018 action, he filed the present action. A second judge of the Superior Court dismissed the complaint on the ground that the judgment in the 2018 case precluded the present action. A panel of this court reversed that judgment in an unpublished memorandum and order. See Wright v. Turco, 100 Mass. App. Ct. 1133 (2022). Essentially, the panel concluded that because the defendants in the 2018 action had been sued solely in their official capacities, and, in the present action, Wright sued the defendants in their individual capacities, there was no privity of parties. Id., slip op. at 6-7. The case was remanded to the Superior Court where, as we discuss infra, summary judgment was entered in favor of the defendants.

3

reason to believe contraband is being introduced through the mail based on the paper color, texture, etc., a photocopy of the original correspondence rather than the original correspondence may be forwarded to the inmate." 103 Code Mass. Regs. § 481.12(2) (2017).

Thereafter, in 2018, the department adopted a pilot program, and, later, the SOP at issue here for processing all nonprivileged incoming mail at DOC facilities experiencing issues with inmate drug use. DOC officials were particularly concerned about situations where drugs could be diluted and sprayed on paper. To address this concern, the pilot program (and the SOP) entailed photocopying all nonprivileged mail, providing photocopies to inmates, and then storing the original mail for up to three months before shredding it unless the inmate paid for the original mail to be returned to the sender. As noted, the protocol set forth in the pilot program was incorporated into the SOP, which has since been codified by regulatory amendment. See 103 Code Mass. Regs. § 481.12(4) (2022).

In his complaint, Wright alleged that notwithstanding his incarceration, he retains an interest in his nonprivileged mail that is protected by the First Amendment. He further asserted that the seizure of his nonprivileged mail without probable cause to believe he was engaged in criminal activity violates his right under the Fourth Amendment. According to Wright, the interception and copying of his mail can only be lawfully

4

accomplished by obtaining a search warrant.  Lastly, Wright argued that the SOP violates his liberty and property interests protected by the Fourteenth Amendment.  In a comprehensive memorandum of decision and order, the judge addressed each argument in turn and ultimately rejected them for the following reasons.[4]

Regarding Wright's First Amendment claim, the judge acknowledged that prison inmates retain their First Amendment rights but noted that they do so only to the extent those rights are consistent with the limitations inherent in the circumstances of incarceration and the legitimate goals and policies of the penal institution.  Relying on Wolff v. McDonnell, 418 U.S. 539 (1974), among other United States Supreme Court and First Circuit decisions, the judge concluded that the SOP did not infringe upon Wright's First Amendment rights because the SOP did not authorize censorship of the mail or impact the content of the inmate's correspondence.  The judge further determined that "[e]ven if the evidence permitted a finding that photocopying [an inmate's mail] somehow infringed upon [Wright's] First Amendment rights, any such infringement

_____

[4] Although our review is de novo, we are assisted in this case by the judge's thorough analysis and reach the same conclusions for the reasons he articulated in his memorandum of decision and order.

5

was permissible as a matter of law" because it was justified as a policy "reasonably related to legitimate penological interests [quotation omitted]." In reaching this conclusion, the judge applied the standard set forth by the United States Supreme Court in Turner v. Safley, 482 U.S. 78, 89 (1987). That standard, which requires consideration of four factors, has been described by the Supreme Judicial Court in Commonwealth v. Jessup, 471 Mass. 121, 131 (2015), as follows (quotations and citations omitted):

> "The first Turner factor is multifold [and involves determining] whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective. The second factor requires determining whether alternative means exist for exercising the challenged right. The third factor considers the impact the accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison. Last, . . . [i]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."

The judge reasoned that (1) "the undisputed evidence of record demonstrates that the photocopying SOP was promulgated for the legitimate purpose of promoting institutional safety through the enhanced detection of drug smuggling at DOC facilities," (2) "[w]hile not themselves the original epistolary documents, the photocopies nonetheless permitted inmates to enjoy the full and undiminished substance of the letters

6

(including handwritten or hand-drawn letters and cards),"

(3) "removal of the photocopying SOP would likely compromise the health and safety of prison personnel and inmates alike," and (4) "[Wright] identifies no alternative solution that would preserve his claimed First Amendment right in original mail transmittal at only de minimus cost to valid penological interests [quotation omitted]."

With respect to Wright's Fourth Amendment claim, the judge observed that in order to establish a violation, Wright was required to demonstrate that he had a reasonable expectation of privacy in the items (incoming nonprivileged mail) that (allegedly) were seized. To meet this burden, Wright needed to show that he had both a subjective expectation of privacy and that the expectation of privacy is one that society is prepared to recognize as reasonable. See Commonwealth v. Miller, 475 Mass. 212, 219-220 (2016). Generally, as the judge noted, the question whether an inmate has a subjective expectation of privacy "turns on whether the inmate has notice of the policy of the penal institution allowing for the search or seizure of a particular item." Id. at 220. Wright could not meet this burden, the judge concluded, because he had clear notice of the SOP allowing for the seizure and photocopying of his nonprivileged mail. Accordingly, the judge concluded that Wright's Fourth Amendment claim failed as a matter of law.

7

Lastly, the judge addressed Wright's claim under the Fourteenth Amendment and determined that although Wright had a liberty interest in "uncensored communication by letter [quotation omitted]," he failed to establish that he was deprived of that right because he received the complete contents of all nonprivileged mail in photocopied form. The judge further observed that Wright's due process property right was not violated because the SOP provided for the original mail to be sent to a designated individual, thereby depriving Wright of possession but not ownership of the mail.

After concluding that there was no infringement upon Wright's constitutional rights, the judge addressed the defendants' alternative ground advanced in support of their motion for summary judgment, that is, that they were entitled to qualified immunity. The defendants asserted, and the judge agreed, that they have qualified immunity to civil rights liability in this case because there was no clearly established law providing that photocopies of nonprivileged incoming mail violated inmates' constitutional rights.

2. Discussion.[5] Our review of the allowance of a motion for summary judgment is de novo. Gaskins v. Silva, 101 Mass.

---

[5] We note that the defendants argue that Wright's claim for damages is moot because his original mail was returned to him after he prevailed in the 2018 case. Even if the case is moot, we exercise our discretion to address the arguments as the SOP

8

App. Ct. 555, 557 (2022).  "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Id., quoting Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021).

Wright argues that the judge erred in allowing the defendants' motion for summary judgment for several reasons.  First, he asserts that the judge erred in concluding that his rights under the First, Fourth, and Fourteenth Amendments were not violated.  Second, Wright claims that there are genuinely disputed material facts as to whether the DOC has a valid penological interest in intercepting and photocopying nonprivileged inmate mail and whether the DOC had a reasonable individualized suspicion that Wright had engaged in the smuggling of drugs or other contraband.  Lastly, Wright argues that the DOC failed to respond adequately to his discovery requests and, as a result, the entry of summary judgment was premature.

We begin our discussion with Wright's claim that the SOP violates his rights under the First Amendment.  "Regulations, polices or practices that restrict the written correspondence or

_____

is currently in effect and the issues raised by Wright will otherwise evade review.  See Lynn v. Murrell, 489 Mass. 579, 583-584 (2022).

9

mail of prisoners no doubt implicate the First Amendment's guarantee of freedom of speech." Jessup, 471 Mass. at 129. Here, however, the SOP at issue did not "restrict" Wright's ability to receive correspondence. To the contrary, Wright maintained full access to all correspondence, albeit in a different form. While it is true, as Wright contends, that the SOP does not provide an alternate means of receiving the original nonprivileged mail, the photocopies sufficiently permit an inmate to enjoy the substance of the mail.[6] In addition, as the judge aptly explained when applying the four factors set forth in Turner, 482 U.S. at 89, an inmate's First Amendment rights may be subordinated to the department's legitimate penological interests and concerns. See Champagne v. Commissioner of Correction, 395 Mass. 382, 386 (1995), quoting Pell v. Procunier, 417 U.S. 817, 822 (1994) ("The United States Supreme Court has held that 'a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system'"). In this case, the record demonstrates that the DOC has a legitimate penological concern, namely the prevention of drug smuggling into the correctional institutions,

---

[6] We note that the SOP also provides for color photocopies of drawings or pictures and allows for the direct receipt of original photographs from "verifiable photo-printing companies."

10

which, in turn, protects the safety of employees and inmates. It may very well be, as Wright argues, that implementation of the SOP has not reduced the entry of drugs via mail to the extent anticipated; however, the success or lack thereof of the policy does not bear on the question of legitimacy. It suffices that the policy is rationally related to a legitimate penological objective. See Commonwealth v. Ecker, 92 Mass. App. Ct. 216, 220 (2017).

We also reject Wright's claim that the SOP violated his Fourth Amendment rights. Contrary to his assertion, there is no basis on which we can conclude that DOC was required to obtain a warrant before opening and photocopying Wright's nonprivileged mail. For example, in Cacicio v. Secretary of Pub. Safety, 422 Mass. 764 (1996), the Supreme Judicial Court held that the monitoring of inmate telephone calls by DOC does not violate the Fourth Amendment (or art. 14 of the Massachusetts Declaration of Rights) because the inmates did not have a reasonable expectation of privacy in such calls and, in addition, the inmates were notified that their calls were being monitored. Id. at 769-773. By analogy, there is similarly no expectation of privacy in nonprivileged mail such that a warrant is required before its inspection and photocopying. And, despite Wright's claim, the record demonstrates that he received notice of the SOP.

11

Next, although inmates enjoy the procedural protections of due process under the Fourteenth Amendment, such protections against the deprivation of property apply "only if there is an existing liberty or property interest at stake." O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 135 (1993). The defendants argue, and we agree, that Wright has not been deprived of property within the meaning of the due process clause of the Fourteenth Amendment because he received the contents of all nonprivileged mail through photocopies and was permitted to forward the original mail to a designated individual if he wished.[7] Our cases recognize the distinction between the right to own property and the right to possess property while in prison. See Mason v. Department of Correction, 75 Mass. App. Ct. 1111, slip op. at 4 (2009), citing Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991) (no deprivation of property where prisoner's ring and postage stamps were sent to recipient of his choosing). Because Wright could designate where his original mail should go, he was only deprived of possession of that mail and not ownership of it. Accordingly, we conclude that Wright has not established that

---

[7] The SOP provided that original mail be stored for at least thirty days, during which time "the inmate may choose to have the original mail sent to a designated person at the inmate's expense."

implementation of the SOP has deprived him of property or a liberty interest without due process.[8]

More importantly, however, we conclude that even if the defendants had infringed upon Wright's constitutional rights, the defendants nonetheless were entitled to summary judgment because they enjoy qualified immunity.  "Qualified immunity 'shields law enforcement officials who reasonably but mistakenly believe that they are acting in accordance with constitutional mandates.'"  Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 403 (2002), quoting Medeiros v. Dracut, 21 F. Supp. 2d. 82, 85 (D. Mass. 1998).  A determination of qualified immunity entails a two-part inquiry.  A judge must decide whether, "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right," and, if so, the judge must then ask, "whether the right was clearly established so that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted [quotations omitted])."  Id. at 403-404.  Here, the defendants are entitled to qualified immunity because a reasonable corrections official

---

[8] Even if we were to conclude otherwise, any infringement on Wright's rights under the Fourteenth Amendment is permissible for the same reasons that an infringement on Wright's First Amendment rights is justified, that is, because the SOP is reasonably related to legitimate penological goals.

would not have known that the adoption and enforcement of the SOP violated a clearly established constitutional right.

While, as the judge observed, the SOP at issue was later struck down because of a failure to follow the APA, the terms of the SOP itself were never declared unlawful. We agree with the judge that the record demonstrates that the defendants were always acting in a good faith belief that the SOP was reasonable and lawful. Wright has not pointed to any facts that show a contrary intent. Nor has Wright pointed to any law or precedent explicitly prohibiting the defendants' conduct. As a result, we conclude that the defendants are entitled to qualified immunity.

Given our conclusion regarding qualified immunity, we need not address Wright's claim that summary judgment was improper due to the existence of genuinely disputed material facts. All alleged factual disputes relate to Wright's constitutional claims and do not have any bearing on the defendants' claim of qualified immunity.

Finally, we agree with the defendants that Wright has waived any challenge to alleged discovery violations when he filed his cross motion for summary judgment and thereafter asserted that the case should be decided as a matter of law in his favor. Accordingly, any alleged discovery violations are not before us.

The companion case.  We now turn to the companion case, which raises nearly identical challenges to the SOP at issue in Wright's appeal.[9]  Like Wright, the lead plaintiff in the companion case, Tony Gaskins, is an inmate in the lawful custody and care of DOC.  Gaskins and others, who are no longer participating in the appeal,[10] brought an action against Turco and Stephen Kennedy, who at all relevant times was the Deputy Superintendent of Operations at MCI-Norfolk, claiming, among other things, that the SOP violated their rights under the First and Fourteen Amendments.[11]  Given our conclusion that the

_____

[9] Unlike Wright, the plaintiffs in the companion case also claimed that the SOP violated their rights under arts. 12 and 14 of the Massachusetts Declaration of Rights.  We need not address the State constitutional claims separately because in this instance such an analysis does not lead to a contrary result. Plaintiff Tony Gaskins, the only plaintiff to subscribe the notice of appeal, see note 10, infra, does not argue otherwise.

[10] The defendants contend, and we agree, that because the other plaintiffs, Jeffrey Britto, Terry Carter, Michael Hunter, and Philip Rise, failed to properly notice an appeal from the allowance of the defendants' motion for summary judgment, or sign onto the memorandum of law submitted in lieu of a brief, they have forfeited their appeal.  See Mass. R. Civ P. 11 (a) (1), as appearing in 488 Mass. 1403 (2021) ("Parties who are not represented by an attorney shall sign their pleadings . . . [i]f a pleading is not signed . . . it may be stricken and the action may proceed as though the pleading had not been filed").  We further note that plaintiff Derrick Daniels was dismissed from the appeal by order entered November 2, 2023.

[11] Gaskins's action also has a lengthy procedural history. We need only note that Gaskins initially sought declaratory, injunctive, and monetary damages stemming from the implementation of the first SOP, which was later declared invalid.  Before the SOP was reinstated, the defendants filed a

15

implementation of the SOP did not result in any constitutional violations, and that, even if it did, the defendants are entitled to qualified immunity, Gaskins's claims do not require any discussion.  They fail for the same reasons Wright's claims do not warrant relief.

Conclusion.  With respect to case no. 2084CV02961 (Suffolk Superior Court), the summary judgment entered June 9, 2023, is affirmed.  With respect to case no. 1885CV01665 (Worcester

motion for summary judgment, which was allowed, and Gaskins filed a notice of appeal.  Meanwhile, as we have discussed, once the SOP was properly promulgated, the defendants filed a second motion for summary judgment, which also was allowed.  The record is not clear as to whether Gaskins filed a proper notice of appeal from the second motion for summary judgment. Furthermore, it is unclear whether Gaskins is challenging the implementation of the first (now vacated) SOP or the SOP currently in place.  However, based on our review of the proceedings, which include a series of motions and status reports, we are satisfied that Gaskins's challenge to the current SOP has been sufficiently raised and is properly before us.

16

Superior Court), the summary judgment entered September 11, 2023, is affirmed.

<u>So ordered</u>.

By the Court (Vuono, Neyman & D'Angelo, JJ.[12]),

Clerk.

Entered:  November 27, 2024.

---

[12] The panelists are listed in order of seniority.