DENNIS A. CIAMPI *vs.* COMMISSIONER OF CORRECTION
& others.[1]

Suffolk. April 9, 2008. - August 15, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Civil,* Action in nature of certiorari. *Commissioner of Correction. Imprisonment,* Enforcement of discipline. *Due Process of Law,* Prison regulation.

In an action in the nature of certiorari challenging the validity of the Department of Correction's (department's) regulations and substance abuse policy that allowed it to withdraw funds from a prisoner's savings and personal account to satisfy a restitution sanction in a disciplinary action, the Superior Court judge erred in granting summary judgment in favor of the incarcerated plaintiff, where the challenged regulations and policy were entirely within the Commissioner of Correction's broad grant of statutory authority to maintain prison discipline and were consistent with the Legislature's intent, and where the regulations and policy were reasonably related to the overarching goal of maintaining safety and discipline in prisons. [164-169] MARSHALL, C.J., dissenting, with whom BOTSFORD, J., joined.

There was no merit to an incarcerated plaintiff's claim that the Commissioner of Correction's seizure of funds from the plaintiff's savings and personal account to satisfy a restitution sanction in a disciplinary action violated his due process rights, because he was accorded due process through the disciplinary hearing and subsequent appeal, and nothing more was required. [169-171]

CIVIL ACTION commenced in the Superior Court Department on December 23, 2002.

The case was heard by *John C. Cratsley,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kevin A. Anahory* (*David J. Rentsch* with him) for the defendants.

---

[1] A former Commissioner of Correction, a former superintendent of the Old Colony Correctional Center, correction officers employed by the Department of Correction, and the treasurer at the Souza-Baranowski Correctional Center.

*Marc H. Estrich* for the plaintiff.

*Peter J. Costanza* for Massachusetts Correctional Legal Services, Inc., amicus curiae, submitted a brief.

IRELAND, J. The plaintiff, Dennis A. Ciampi, commenced an action in the nature of certiorari, G. L. c. 249, § 4, against the defendants challenging the validity of the Department of Correction's (department's) regulations and substance abuse policy that allow it to withdraw funds from a prisoner's savings and personal account to satisfy a restitution sanction in a disciplinary action. In his complaint he alleged, inter alia, that the seizure of his account violated his State and Federal constitutional rights, and he sought declaratory relief under G. L. c. 231A and damages under 42 U.S.C. § 1983 (2000). A Superior Court judge granted the plaintiff's motion for summary judgment and denied the defendants' cross motion for summary judgment, concluding, inter alia, that the department lacked the statutory authority to promulgate regulations authorizing the withdrawal of money from an inmate's account as restitution. The defendants appealed, and we transferred the case to this court on our own motion. Because we conclude that restitution as a disciplinary sanction is a part of the Commissioner of Correction's (commissioner's) broad grant of statutory authority to maintain prison discipline and that withdrawing funds from the plaintiff's account to satisfy a restitution sanction did not violate any statutorily protected property interest he may have had, we reverse the order granting the plaintiff's motion for summary judgment and grant summary judgment for the defendants.

*Background.* The material facts are not in dispute, thus we present them in summary form, reserving certain details for our discussion of the issues. On September 13, 2002, a correction officer searched the plaintiff's cell and found a bottle of "home brew."[2] Consequently, the plaintiff was served with a disciplinary report and was told that if he was found guilty, he might be given a restitution order in the amount of $144 to cover the costs of twelve months of mandated testing for controlled substances.

On the same day, a urine test administered to the plaintiff

---

[2] The plaintiff calls the substance "fermented fruit juice."

tested positive for alcohol, resulting in a second disciplinary report. The plaintiff was notified that a disciplinary hearing for the offenses charged in both reports would be held on September 27, 2002, given a copy of the confirmatory screen results from the laboratory, and given two notices regarding restitution to cover the costs of periodic substance abuse testing and of the urine test.[3]

After a process consisting of a disciplinary hearing and an appeal, several sanctions were imposed on the plaintiff, including paying $144 in restitution. The money was withdrawn from his prison account by the department on October 31, 2003.

In granting summary judgment for the plaintiff, the judge found that pursuant to G. L. c. 127, §§ 3 and 48A, the plaintiff had a protected property interest in the monies in his account. Relying on Welsh *vs.* Department of Correction, Middlesex Superior Court, No. 2000-4998F (April 9, 2001), a case concerning a deduction from an inmate's account to cover the cost of a deoxyribonucleic acid assessment, the judge concluded that the department exceeded the statutory authority of G. L. c. 124, § 1, and G. L. c. 127, § 33, in promulgating regulations that allowed the defendants to withdraw money from the plaintiff's account to satisfy a restitution sanction.

*Discussion.* 1. General Laws c. 124, § 1, states, in relevant part:

> "In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction . . . shall . . . (*b*) maintain security, safety and order at all state correctional facilities . . . (*i*) investigate grievances and inquire into alleged misconduct within state correctional facilities; . . . (*q*) make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding . . . safety, *discipline* . . . and custody for all persons committed to correctional facilities" (emphasis added).

---

[3]The first notice stated that if he was found guilty at the hearing he might be given a restitution order in the amount of $288 to cover the cost for two years of periodic substance abuse testing. The second notice stated that the plaintiff might have to pay $37.50 to cover the cost of the initial urine test.

General Laws c. 127, § 33, states, in relevant part:

"The superintendents of all institutions under the jurisdiction of the department of correction and the superintendents and keepers of jails and houses of correction shall cause *all necessary means to be used to maintain order* in the institutions under their supervision, [and] *enforce obedience* . . ." (emphasis added).

The defendants argue that regulations and policies were properly promulgated pursuant to these statutory provisions. The regulations expressly authorize restitution as a sanction in disciplinary proceedings. 103 Code Mass. Regs. §§ 430.09,[4] 430.25 (1995).[5] In addition, the superintendent is allowed to deduct from or impound an inmate's account to satisfy a restitution sanction imposed by a disciplinary proceeding.[6] 103 Code Mass. Regs. § 405.17 (1999).[7] Moreover, an internal substance

---

[4]Title 103 Code Mass. Regs. § 430.09 (1995) states, in pertinent part, that where a disciplinary officer determines that restitution is an appropriate sanction, that officer must provide the inmate with an itemized list of damages or costs associated with the misconduct. This regulation was amended in January of 2006 and is now codified at 103 Code Mass. Regs. § 430.10 (2006).

[5]Title 103 Code Mass. Regs. § 430.25 (1995) stated that restitution was permissible for major and minor sanctions.

Effective January 30, 2006, 103 Code Mass. Regs. § 430.25 was revised. Offenses are now divided into categories but restitution remains an authorized sanction under each category. In addition, the regulation provides that "[f]indings requiring the payment of an amount of restitution . . . shall be supported by a preponderance of the evidence." 103 Code Mass. Reg. § 430.25(6) (2006).

[6]The superintendent is "the Chief Administrative Officer of a correctional facility." 103 Code Mass. Regs. § 405.06 (1999). One of the superintendent's responsibilities is to consider inmate appeals regarding findings or sanctions made by a hearing officer. 103 Code Mass. Regs. § 430.18 (1995).

[7]Title 103 Code Mass. Regs. § 405.17 (1999) provides in relevant part:

"(1) An inmate who has been found guilty through the disciplinary process . . . and has been ordered to make restitution as a sanction, may consent to having funds debited from his savings and personal accounts . . . . (3) Should the inmate refuse to consent to voluntary debiting of his account(s) . . . the Superintendent may order the debiting of the inmate's . . . account in an amount up to one-half of the money earned by an inmate while incarcerated provided, however, any or all of the money may be debited if the inmate is a sexually dangerous person or person serving a life sentence. . . . (4) If the amount debited from an inmate's account is insufficient to satisfy the restitution order,

abuse policy establishes guidelines for department staff using restitution as a disciplinary sanction. 103 DOC § 525 (2001).[8]

The plaintiff contends that the commissioner exceeded her authority pursuant to G. L. c. 124, § 1 (*b*), (*i*), and (*q*), and G. L. c. 127, § 33, in enacting the regulations authorizing debiting accounts for restitution. "A highly deferential standard of review governs a facial challenge to regulations promulgated by a government agency." *Massachusetts Fed'n of Teachers* v. *Board of Educ.*, 436 Mass. 763, 771 (2002). "[A] properly promulgated regulation has the force of law . . . and must be accorded all the deference due to a statute (citation omitted)." *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). Although deference does not mean abdication, *Quincy* v. *Massachusetts Water Resources Auth.*, 421 Mass. 463, 468 (1995) ("regulation that is irreconcilable with an agency's enabling legislation cannot stand"), it requires that we "apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). See *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 596 (1992) (enforcement of regulations should be refused only if they are "plainly in excess of legislative power"). A party challenging a regulation bears the burden of proving that the regulation is "illegal, arbitrary, or capricious." *Borden, Inc.* v. *Commissioner of Pub. Health*, *supra* at 722.

---

the Superintendent may order the impoundment of the inmate's account for the remaining amount of restitution owed."

We note that, effective November 19, 2004, 103 Code Mass. Regs. § 405.17 (2004) was amended. Now when a restitution sanction is imposed on an inmate through a disciplinary process, that inmate's account will automatically be frozen, and the treasurer may withdraw all funds available until the restitution is paid.

[8]Title 103 DOC § 525.07 (2001) states that if an inmate's substance abuse screening is positive the following events occur: a disciplinary report is filed, the inmate is informed of the test result, a confirmatory screen is available if the inmate wishes to plead not guilty, and if the confirmatory screen confirms the initial screening the inmate may be responsible for the cost of the confirmatory test.

The plaintiff acknowledges that G. L. c. 124, § 1 (*b*), and G. L. c. 127, § 33, "give the [c]ommissioner the power to maintain security, safety and order in jails"; that G. L. c. 124, § 1 (*i*), "gives the [c]ommissioner the power to investigate grievances and inquire into alleged misconduct"; and that G. L. c. 124, § 1 (*q*), "does contain a general provision of authority to the [d]epartment." However, he contends that the "general grant of authority does not give the [c]ommissioner the power to promulgate regulations authorizing [the debiting of] money from inmate accounts as restitution," because an agency may not use a broad interpretation of a statute where the legislative intent of that statute is clear and unambiguous.

The plaintiff argues that, because the Legislature has specifically enumerated in what circumstances the department is authorized to make deductions from an inmate's account, the Legislative intent is clear. He cites G. L. c. 124, § 1 (*r*) (authorizing commissioner to deduct money from inmate's account for haircuts); G. L. c. 127, § 16A (authorizing commissioner to promulgate rules and regulations for reimbursement of medical expenses by persons in prerelease facilities); G. L. c. 127, § 48 (authorizing commissioner to promulgate rules and regulations for "hours, conditions of employment, wage rates . . . and deductions from said wages pursuant to the provisions of [G. L. c. 127, § 86F]")[9]; and G. L. c. 127, § 48A (superintendent may expend one-half of money earned by inmate for "articles for the use of the inmate" and may expend on inmate's written request "expenses related to family illness or death, legal defense, provision of essential articles of personal use"), to support his argument that because restitution as a disciplinary sanction is not

---

[9]General Laws c. 127, § 86F, states in relevant part: "The sheriff shall deduct [from an inmate's earnings] the following:

"First, an amount necessary to satisfy the victim and witness assessment ordered by a court pursuant to [G. L. c. 258B, § 8]; second, an amount determined by the sheriff for substantial reimbursement to the county for providing food, lodging and clothing for such inmate; third, the actual and necessary food, travel and other expenses of such inmate when released for employment under the program; fourth, the amount ordered by any court for support of such inmate's spouse or children; fifth, the amount arrived at with public welfare departments; sixth, sums voluntarily agreed to for family allotments and for personal necessities while confined."

part of this list of deductions it should not be permitted by resorting to "catchall statutes," citing G. L. c. 124, § 1 (*b*), (*i*), and (*q*), or broad general grants of authority. We disagree.

Each of the challenged regulations and policy is entirely within the commissioner's broad grant of authority, under G. L. c. 124, § 1 (*q*), to maintain prison discipline and is consistent with the Legislature's intent. When the Legislature vests an agency with "broad authority to effectuate the purposes of an act 'the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation." ' " *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 524 (1979), quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). The commissioner stated in an affidavit that restitution is an "essential disciplinary tool" that serves several penological functions such as protecting the staff, deterring future misconduct, and holding an inmate accountable for his actions. Because maintaining internal security within a correctional facility is "central to all other corrections goals," *Blackburn* v. *Snow*, 771 F.2d 556, 562 (1st Cir. 1985), quoting *Hudson* v. *Palmer*, 468 U.S. 517, 527 (1984), the challenged policy and regulations that authorize restitution as a disciplinary sanction are reasonably related to the overarching goal of maintaining safety and discipline in prisons.[10] See *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 434 (1982), quoting *Bell* v. *Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption . . . of policies and practices that . . . are needed to preserve internal order and discipline . . .").

Moreover, "[a]n express grant carries with it by implication all incidental authority required for the full and efficient exercise

[10]We are unpersuaded by the plaintiff's argument that the commissioner's "reliance on restitution as an essential disciplinary tool is misplaced" because there are "far more essential tools affecting the inmates day to day existence than the garnishing of funds." The mere presence of more severe disciplinary tools does not render restitution sanctions a less effective method of maintaining order and discipline in prisons. Moreover, in the *Cepulonis* case, cited by the dissent, *post* at 176 n.10, the court implicitly approved a restitution order of $10,774 when it stated that a fine has a remedial and a deterrent aspect. *Cepulonis* v. *Commonwealth*, 426 Mass. 1010, 1011 (1998) (restitution order did not implicate double jeopardy clause).

of the power conferred." *New England Med. Ctr., Inc.* v. *Rate Setting Comm'n,* 384 Mass. 46, 52-53 (1981), quoting *Scannell* v. *State Ballot Law Comm'n,* 324 Mass. 494, 501 (1949). Therefore, a regulation need not be "traced to specific words" in a statute because "an agency's powers to promulgate regulations 'are shaped by its organic statute taken as a whole . . . .' " *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 770 (1980), quoting *Commonwealth* v. *Cerveny,* 373 Mass. 345, 354 (1977). See *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health,* 379 Mass. 70, 75 (1979) ("regulation may be authorized even where it cannot be traced to specific statutory language").

In any event, the fact that there is nothing in G. L. c. 124, § (1) (*q*), that specifically authorizes the department to debit money from a prisoner's account is not dispositive. See *Simmons* v. *County of Suffolk,* 230 Mass. 236, 237 (1918) (maxim that expression of one thing is implied exclusion of other things "is not conclusive of legislative intent, but is to be considered with regard to the object sought to be obtained by the entire legislation of which the subject-matter to which it relates is but a part"). See also *Brady* v. *Brady,* 380 Mass. 480, 484 (1980) (statutory expression of one thing is implied exclusion of other things omitted from statute not followed where it would frustrate general beneficial purpose of statute); *Forcier* v. *Hopkins,* 329 Mass. 668, 671 (1953) (same). Here, the general purpose of G. L. c. 124, § 1 (*b*), (*i*), and (*q*), and G. L. c. 127, § 33, is to maintain safety and discipline in correctional facilities. As discussed *supra,* restitution as a disciplinary sanction is an "essential disciplinary tool" that, if eliminated, would frustrate the commissioner's ability to carry out the Legislature's intent.[11]

2. The plaintiff next argues that "the seizure of funds from

---

[11]The parties devote much time to discussing whether the judge, in granting summary judgment for the plaintiff, properly relied on Welsh *vs.* Department of Correction, Middlesex Superior Court, No. 2000-4998F (April 9, 2001), or whether, as the defendants contend, Cook *vs.* Marshall, Middlesex Superior Court, No. 2000-2830 (Oct. 17, 2001), was more apt. In the Welsh case, the judge concluded that the commissioner's general grant of authority pursuant to G. L. c. 124, § 1 (*q*), does not encompass the authority to promulgate regulations authorizing deductions for deoxyribonucleic acid assessment fees without an inmate's consent because there is no statute expressly authorizing such a deduction. In contrast, the judge in the Cook case concluded that the department's regulations authorizing an inmate's account to be frozen to

[his] inmate account violates his protected property interest."[12] We disagree.

Prison inmates "may not be deprived of life, liberty, or property without due process of law." *Wolff* v. *McDonnell*, 418 U.S. 539, 556 (1974). However, the protections of procedural due process apply only if there is an existing liberty or property interest at stake. *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. 132, 135 (1993). We assume without deciding that, in the Commonwealth, prisoners have a statutorily protected property interest in the funds in their prison accounts entitling them to due process protection. See G. L. c. 127, § 3 ("[The department] shall keep a record of all money or other property found in possession of prisoners . . . and shall be responsible for the safekeeping and delivery [of property when the prisoners are discharged]"). See also *Gillihan* v. *Shillinger*, 872 F.2d 935, 938-939 (10th Cir. 1989) (statutes that create expectation that money not used will be returned to inmate at end of his incarceration create protected property interest).

At a minimum, the due process clause of the Fourteenth Amendment to the United States Constitution requires that there be notice and an opportunity for a hearing before a person is deprived of a protected property interest. See *Logan* v. *Zimmerman*, 455 U.S. 422, 428, 434 (1982). In a disciplinary proceeding where a prisoner's liberty interest is at stake he must be given "(1) advanced written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."

---

satisfy a restitution order was valid. Given our conclusion, we need not address the applicability of these cases, which, in any event, have no precedential value.

[12]The dissent argues that, in concluding that the commissioner has the power to authorize restitution as a sanction pursuant to G. L. c. 124, § (1) (*q*), our decision leaves the commissioner free to "deduct any amount" from an inmate's account. *Post* at 175-176. However, in this appeal, the plaintiff does not challenge the amount of the restitution sanction; therefore, the issue of its reasonableness is not before the court. We also note that, as discussed *infra*, when the plaintiff appealed from the sanctions imposed by the hearing officer, the superintendent reduced the plaintiff's restitution sanction from $288 to $144.

*O'Malley* v. *Sheriff of Worcester County, supra* at 138, quoting *Superintendent, Mass. Correctional Inst. at Walpole* v. *Hill,* 472 U.S. 445, 454 (1985) and citing *Wolff* v. *McDonnell,* 418 U.S. 439, 563-567 (1974). Thus, a "properly conducted prison disciplinary hearing generally satisfies due process." *Jones* v. *Clark,* 607 F. Supp. 251, 256-257 (E.D. Pa. 1984). See *Ruley* v. *Prison Comm'rs,* 628 F. Supp. 108, 110 (D. Nev. 1986).

Here, before any deduction was made from the plaintiff's account, he received written advanced notice of the disciplinary hearing. At the disciplinary hearing itself, the plaintiff pleaded not guilty to the charges under the first disciplinary report and guilty to the charges under the second disciplinary report. During the hearing, he was allowed to make a statement, call witnesses, and present evidence in his defense. When he was found guilty of the charges, he was provided with a written statement from the hearing officer detailing the evidence the officer relied on and stating the reasons for the sanctions. On the first disciplinary report, the plaintiff received (1) loss of visits for one year; (2) loss of canteen privileges for one year; (3) loss of 200 days of statutory good time; and (4) restitution in the amount of $288. On the guilty plea on the second disciplinary report, he received thirty-days' isolation and restitution in the amount of $37.50 for the urine test.

The plaintiff appealed from the sanctions he received as a result of both disciplinary reports. The superintendent denied his appeal from the second disciplinary report, but granted his appeal from the first. As a result, the plaintiff's sanctions under the first disciplinary report were reduced to loss of visits and loss of canteen privileges for six months and $144 in restitution.

In sum, the plaintiff received due process for the deprivation of his property through the disciplinary hearing and subsequent appeal; nothing more was required. See *O'Malley* v. *Sheriff of Worcester County, supra.*

*Conclusion.* For the reasons set forth above, the grant of summary judgment is vacated and summary judgment shall enter for the defendants.

*So ordered.*

MARSHALL, C.J. (dissenting, with whom Botsford, J., joins). I agree with the court that the Commissioner of Correction (commissioner) has broad authority to maintain security, safety, and order in State correctional facilities. *Ante* at 168. See G. L. c. 124, § 1; G. L. c. 127, § 33. I do not question that a prisoner's violation of the commissioner's substance abuse policy is serious, necessitating appropriate discipline. But the commissioner does not have the authority to seize funds from either a prisoner's savings or personal account as a sanction for any and all disciplinary offenses. I respectfully dissent.

The authority of the commissioner to seize a prisoner's funds has been extensively regulated by the Legislature; numerous statutes have been enacted and amended establishing precisely for what purpose and from which source funds can be seized. See, e.g., G. L. c. 124, § 1; G. L. c. 127, §§ 3, 48, and 48A. Indeed, the Legislature has spoken explicitly regarding the commissioner's authority to withdraw funds from inmate accounts because of inmate misconduct. See G. L. c. 124, § 1 (*s*) (authorizing commissioner to make "reasonable deductions" from inmate's account to repay costs of medical treatment for injuries "self-inflicted or inflicted by the inmate on others"). The Legislature has not authorized the commissioner to withdraw funds from inmate accounts as restitution or punishment for disciplinary offenses generally. In view of the comprehensive statutory scheme that specifies in great detail, and circumscribes with particularity, the commissioner's authority to seize only specific funds for specific purposes from prisoner accounts, the commissioner's broad assertion of authority beyond the scope of those constraints is in derogation of legislative delegation and contrary to the expressed intent of the Legislature. See *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare,* 326 Mass. 121, 124 (1950) (administrative officer has "no authority" to promulgate regulations that exceed authority conferred by Legislature).

The commissioner does not dispute that the Legislature has comprehensively regulated the circumstances in which he may withdraw funds from inmate accounts. Authority has been given to deduct funds from prisoner accounts for expenses ranging from the relatively trivial (for example, the cost of a haircut, see

G. L. c. 124, § 1 [r])[1] to payments for family and other compelling needs (see G. L. c. 127, § 48A).[2] The Legislature has authorized the commissioner to deduct "reasonable fees for the maintenance and administration of inmate accounts." G. L. c. 124, § 1 (u). It has authorized the commissioner to deduct "a reasonable fee for any medical and mental health services provided, including prescriptions, medications, or prosthetic devices." G. L. c. 124, § 1 (s).[3] It has regulated the access of prison officials to inmate accounts in other respects. General Laws c. 127, § 3, authorizes a superintendent of a correctional institution to transmit to a court "any part or all of the monies earned or received by any inmate and held by the correctional facility" in order to satisfy judicially imposed victim and witness assessments.[4] The Legislature has authorized the commissioner to deduct funds from inmate earnings to satisfy a judicial order for the support of a spouse or child. See G. L. c. 127, §§ 48, 86F.[5] Although the

---

[1]General Laws c. 124, § 1 (r), requires the commissioner to adopt policies and procedures establishing "reasonable" fees for haircuts and permits him to deduct the fees from the inmates' accounts.

[2]General Laws c. 127, § 48A, permits a superintendent of a correctional institution, on an inmate's written request and in circumstances of "compelling need," to expend funds from the money the inmate has earned for "expenses related to family illness or death, legal defense, provision of essential articles of personal use or any other such circumstances of compelling need."

[3]General Laws c. 124, § 1 (s), also provides that "an inmate shall not be refused medical treatment for financial reasons."

[4]General Laws c. 127, § 3, provides that a superintendent of a correctional institution "shall keep a record of all money or other property found in possession of prisoners committed to such institutions, and shall be responsible to the commonwealth for the safe keeping and delivery of said property to said prisoners or their order on their discharge or at any time before. The superintendents of correctional institutions of the commonwealth and the superintendents and keepers of jails, houses of correction and of all other penal or reformatory institutions shall, upon receipt of an outstanding victim and witness assessment, transmit to the court any part or all of the monies earned or received by any inmate and held by the correctional facility, except monies derived from interest earned upon said deposits and revenues generated by the sale or purchase of goods or services to persons in correctional facilities, to satisfy the victim witness assessment ordered by a court pursuant to [G. L. c. 258B, § 8]. Any monies derived from interest earned upon the deposit of such money and revenue generated by the sale or purchase of goods or services to persons in the correctional facilities may be expended for the general welfare of all the inmates at the discretion of the superintendent."

[5]General Laws c. 127, § 48, directs the commissioner to establish educa-

commissioner has the authority, pursuant to G. L. c. 124, § 1 (*q*), to promulgate "necessary rules and regulations incident to the exercise of powers and the performance of his duties," nothing in that statute, or any other statute relevant to the Department of Correction's supervision and maintenance of prisons, authorizes the commissioner to seize money from a prisoner's account, at least not without the prisoner's consent, beyond the specific authorizations just described.[6]

It is a settled canon of statutory construction that the "statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975). Had the Legislature intended to authorize the commissioner to seize a prisoner's money to pay for drug testing imposed as restitution, or as a sanction for any other disciplinary offense, it would have said so expressly. Today the court turns a blind eye to the specific statutory authorizations to seize funds in prisoner accounts, concluding that to read these provisions as an implied exclusion of others would "frustrate" the general purpose of G. L. c. 124, § 1, and G. L. c. 127, § 33, to maintain safety and discipline in correctional facilities. *Ante* at 169. That reasoning is unpersuasive. First, it renders nugatory all of the statutory provisions that explicitly authorize the commissioner to withdraw

tion, employment, and training programs and to make provisions for deductions from wages earned in those programs "pursuant to the provisions of [§ 86F]." General Laws c. 127, § 86F, in turn, provides for the establishment of county work release programs, and specifically authorizes a sheriff, except the sheriff of Suffolk County, to deduct funds from a participating inmate's earnings, inter alia, to satisfy victim and witness assessments or court orders for support of the inmate's spouse or children, to reimburse the county for the actual and necessary food, travel and other expenses when released for employment under the program, and, as voluntarily agreed, for family allotments and for personal necessities while confined. Section 86F provides that any balance of earnings "shall be credited to the account of the inmate and shall be paid to him upon his final release."

[6]The Legislature's concern regarding access to inmate accounts is fine-tuned and ongoing. Thus, the provision in G. L. c. 124, § 1, for haircut fees was added in 1999, see St. 1999, c. 127, § 132; for medical services, in 2000, see St. 2000, c. 159, § 228; and for account maintenance fees, in 2003, see St. 2003, c. 26, § 367. The Legislature amended G. L. c. 127, § 3, in 1994 to permit a superintendent of a correctional institution to transmit an inmate's funds to courts to satisfy victim and witness assessments. See St. 1994, c. 60, § 125.

funds from prisoner accounts in circumscribed circumstances.[7]

Second, the claim of "frustrat[ion]" is sweeping: the commissioner's broad assertion of authority is particularly troublesome where he has failed to articulate in any respect in what circumstances the costs he incurs in connection with discipline can be charged as restitution, or whether there is any limit on the amounts that may be imposed. Where it has authorized the seizure of funds, the Legislature has specified that the costs must be "reasonable." The court places no limit on the commissioner, leaving him free to impose costs however unreasonable.

The commissioner may act only within the bounds of the authority conferred on him by the Legislature. See *Telles* v. *Commissioner of Ins.*, 410 Mass. 560, 564-565 (1991) ("commissioner may not issue a regulation which is in conflict with statutes which control his authority"). He cannot, by regulation or otherwise, exceed the bounds of his authority. Where the Legislature has so comprehensively regulated the subject, the commissioner cannot "further regulate [it] by the adoption of a regulation which is repugnant to the statute." *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, 412 Mass. 340, 347 (1992), quoting *Commonwealth* v. *Johnson Wholesale Perfume Co.*, 304 Mass. 452, 457 (1939). We are informed,[8] and the commissioner has not challenged, that restitution has been imposed as a sanction in a wide range of circumstances, and for large sums of money. Funds have been seized from inmate accounts for the costs of transportation of an injured inmate to a hospital, as well as for staff overtime

---

[7]We have not previously been asked to consider whether the commissioner may impose restitution as a disciplinary sanction. Contrary to today's holding, other courts considering the question have paid closer attention to the statutory scheme in place. See, e.g., *Longmire* v. *Guste*, 921 F.2d 620, 623-624 (5th Cir. 1991) (upholding constitutionality of restitution for property damage and medical expenses where Louisiana statute allows for restitution from offender who, inter alia, "damages or destroys property" or causes "injury to himself," see La. Rev. Stat. Ann. § 15:875 [C] [1] [West Supp. 1990]); *Ruley* v. *Prison Comm'rs*, 628 F. Supp. 108, 111 (D. Nev. 1986) (concluding that regulation providing for restitution of medical costs unlawful when promulgated because enabling statute authorized seizure of funds for property damage only; defect later cured by statutory amendment).

[8]The information is provided by the amicus brief of Massachusetts Correctional Legal Services, Inc., which provides civil legal services to prisoners in Massachusetts.

salary.[9] Commissioners have imposed substantial costs associated with locating, apprehending, and returning inmates who have escaped[10]; costs related to drug testing; and the costs of assembling officers to quell a demonstration in an inmate's cell.[11] The commissioner does not suggest, and the court today does not impose, any limit on the commissioner's "broad" authority to deduct any amount, however unreasonable, for any reason, from an inmate's account. The court simply ignores the petitioner's substantive due process claim challenging the regulations that purport to give the commissioner that right.

Where the Legislature has spoken, and spoken with clarity, it is not for this court to substitute its judgment for that of the Legislature. If the commissioner has concluded that certain

[9]In 2004, the commissioner promulgated 103 DOC § 763.06, which establishes fees to be assessed pursuant to G. L. c. 124, § 1 (*s*), so long as the injuries were not inflicted by the inmate as a result of mental illness. Title 103 DOC § 763.06(6) further provides that "[w]here such injuries are determined not to result from an inmate's mental illness, nothing in this provision shall preclude a separate sanction of restitution from the inmate pursuant to 103 [Code Mass. Regs. §] 430.25, and collection of that sanction . . . for any other costs related to the injuries, including incidental costs (e.g., ambulance fees, overtime salaries for hospital coverage by correction officers, etc.)." A judge in the Superior Court has upheld an assessment of the costs of transporting an injured inmate to a hospital. Cook *vs.* Marshall, Middlesex Superior Court No. 2000-02830 (Oct. 17, 2001). We have not addressed the issue.

[10]In *Cepulonis* v. *Commonwealth*, 426 Mass. 1010 (1998), an escaped prisoner was apprehended and returned to prison, and sanctioned with a restitution of $10,774. This court held that the fine had remedial and deterrent aspects and was not so extreme as to constitute criminal punishment implicating the double jeopardy clause. There was no issue raised in that case, and we did not consider whether the commissioner had the authority to impose the restitution fine.

[11]General Laws c. 124, § 1 (*r*) and (*s*), authorize the commissioner to withdraw reasonable fees for haircuts and medical care from inmates' *earnings*. G. L. c. 127, § 48A. However, 103 Code Mass. Regs. § 405.17 (2004), providing for "Disciplinary Process Sanctioned Reimbursements," now permits a superintendent to freeze an inmate's personal account and withdraw *all* funds available in that account until full restitution is made. This may include any outside donations made to an inmate and deposited in the inmate's account in accordance with 103 Code Mass. Regs. § 405.16 (1999). In contrast, 103 Code Mass. Regs. § 405.17(3) (1999), which was in effect when the funds were withdrawn from the plaintiff's account, permitted a superintendent to withdraw from an inmate's account "an amount up to one-half of the money *earned* by an inmate while incarcerated" (emphasis added), unless the inmate was a sexually dangerous person or a person serving a life sentence, in which case all funds could be withdrawn.

costs related to disciplinary infractions — the costs of drug test-ing, for example — should be paid by an offending prisoner, the avenue for relief is clear. He should seek the authority to do so from the Legislature. There is no authority, judicial or other-wise, for the commissioner to bypass the constraints so care-fully articulated by the Legislature.