NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WILLIAM TERRY SMITH, | ) | |
| | ) | Supreme Court No. S-14034 |
| Appellant, | ) | |
| | ) | Superior Court No. 2NO-09-00093 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | No. 1431 – September 5, 2012 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Nome, Ben Esch, Judge.

Appearances: William Terry Smith, pro se, Hudson, Colorado, Appellant. Marilyn J. Kamm, Assistant Attorney General, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: Fabe, Winfree, and Stowers, Justices, and Matthews, Senior Justice.** [Carpeneti, Chief Justice, not participating.]

---

\*       Entered under Appellate Rule 214.

\*\*      Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I. INTRODUCTION

William Terry Smith pleaded guilty in a prison disciplinary proceeding to the charge of engaging in mutual combat, and was ordered to pay for 25% of the medical expenses resulting from the infraction. He claims that a prison disciplinary proceeding cannot result in monetary sanctions, and that his due process rights were violated during the proceeding. Because we hold that the regulation allowing for monetary sanctions in prison disciplinary proceedings is valid, we uphold the sanction.

## II. FACTS AND PROCEEDINGS

### A. Facts

William Terry Smith was an inmate at the Anvil Mountain Correctional Center in Nome at the time of the main incident in this case. He was housed with Austin Swan. According to Smith, on the night of October 11 or early morning of October 12, 2008, he was trying to sleep while Swan and some other inmates were playing dominoes and being loud. Smith then kicked the dominoes around. Smith claims that at this point, Swan challenged him to fight. Smith says he declined, and Swan slapped him in the eye. According to Swan, there was no physical contact at this point. Swan reported that early in the morning on October 12, he woke up to Smith hitting him in the face. Smith does not dispute that he hit Swan in the face, but claims that he was acting in self-defense, since he had been struck first. As a result of this altercation, Swan's jaw was broken.

### B. Proceedings

Smith was served with a disciplinary hearing notice on November 4, 2008. It informed him that the hearing would take place on November 12, that he was charged under 22 Alaska Administrative Code (AAC) 05.400(c)(1), and specified that he could be ordered to pay restitution if he was found guilty. The tape of the hearing has been damaged; only the first minute or so of the hearing remains recorded. The hearing officer, Sergeant Haugen, read the incident report at the hearing. Smith was asked if he

had been served with the incident report, if he had been allowed to meet with an adviser, and if he had been told of the potential sanctions that would be imposed if he was found guilty. He answered yes to all of these questions, and entered a plea of guilty. Sergeant Haugen then decided to impose 15 days of punitive segregation and 50% of Swan's medical costs as restitution. Smith was then asked if he wished to appeal, and he said yes. According to Smith, at this point he objected to the monetary sanctions and claimed that his due process rights were being violated. Smith's prisoner account was frozen on the date of the disciplinary hearing.

Smith appealed from the judgment to Superintendent Marc Okuley later in November of 2008. Claiming that Swan had started the physical altercation, Smith asked to be returned to the regular population, asked that his 50% restitution be dropped, and pointed out that Swan was entitled to free medical care as an Alaska Native. He apologized for "what happened to Mr. Swan." Superintendent Okuley denied his appeal, but reduced Smith's restitution to 25%. In April 2009, Smith was informed that his portion of the medical bills that had been received was $7,310.79.

Smith appealed to the superior court, and the administrative appeal was assigned to Superior Court Judge Ben Esch. The Department of Corrections (DOC) moved for an order directing the parties to create a statement of the disciplinary hearing, since the tape of the hearing had been damaged. Judge Esch granted the order, over Smith's objection. Smith also moved for discovery of the medical bills, and any documents showing what medical bills Swan had personally paid. That motion was denied, but Judge Esch specified that to the extent that medical bills were relied upon in setting the restitution amount, the record would be supplemented with that information. DOC supplemented the record with copies of Swan's medical bills, totaling nearly $30,000.

Smith raised 21 points on appeal to the superior court, although not all were fully articulated in his argument. He challenged the validity of the regulation allowing for restitution, claimed that DOC procedures had been violated, claimed that the failure to record the disciplinary hearing was a due process violation, claimed that the order to re-create the disciplinary hearing record was improper, claimed that the freezing of his account had deprived him of the right to bail in a separate criminal matter, and claimed that he could not be punished since he was a pretrial detainee.

Judge Esch dismissed the points alleging violation of DOC policies under AS 33.30.295(b)(2).[1] He noted that the damage to the disciplinary hearing tape was not in itself a due process violation, and that even taking all of the facts in Smith's re-creation of the record to be true, the outcome of the case would not have changed. Judge Esch dismissed the claims related to whether Smith's right to bail had been infringed as issues properly raised in Smith's criminal case. He then analyzed whether 22 AAC 05.470, allowing for restitution in an inmate discipline case, was valid. He found that the sanction of restitution was "reasonable and not arbitrary" for the goal of operating and controlling correctional institutions within Alaska. Judge Esch also found that 22 AAC 05.470 was not at odds with the purpose of AS 33.30.028(a)(4), a statute that specifies the sources of payment for prisoner medical care. He found that the disciplinary hearing itself complied with the requirements of due process for prisoner disciplinary hearings. Judge Esch affirmed the judgment of the disciplinary hearing.

Smith appeals. He claims: (1) that 22 AAC 05.470 is not authorized under AS 33.30.011, and that it is inconsistent with AS 33.30.028(a)(4); (2) that his due process rights were violated by DOC's failure to provide him with proof of Swan's

---

[1] AS 33.30.295(b) requires that prisoners show that they have been prejudiced by the denial of a constitutional right in order to reverse a disciplinary action decision.

medical expenses at the disciplinary hearing; and (3) that the re-creation of the record of the disciplinary hearing was improper.[2]

## III. STANDARD OF REVIEW

"Where the superior court acted as an intermediate court of appeal, we review the administrative decision directly."[3] Alaska Statute 33.30.295 allows reversal of prisoner disciplinary decisions only if the court finds that the prisoner's fundamental constitutional rights were violated and that violation prejudiced the prisoner's right to a fair adjudication.[4] "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[5] "When an administrative regulation is adopted under statutory authority, we review the regulation to determine whether it is 'consistent with and reasonably necessary to carry out the purposes of the statutory

---

[2] Smith also argues that the seizure of his assets had the effect of denying him bail in a separate criminal case. But whether Smith was denied his right to bail in the separate case must be raised in that case. In the proceedings before us, liberally construing Smith's brief, he may be contending his due process rights were violated when his account was frozen after his guilty plea in the disciplinary proceedings but before the actual amount of restitution was known and could be challenged. But if there was a due process violation, it was cured because as of the proceedings in superior court Smith had notice of the amount he was required to pay, he was given the opportunity to challenge it in the superior court, and the amount exceeded the amount that was seized in his account.

[3] *Interior Alaska Airboat Ass'n, Inc. v. State, Bd. of Game*, 18 P.3d 686, 689 (Alaska 2001).

[4] AS 33.30.295(b)(1); *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1233 (Alaska 2003).

[5] *Brandon*, 73 P.3d at 1233.

provisions conferring rule-making authority on the agency' and whether it is 'reasonable and not arbitrary' considering the legislative purpose."[6]

## IV.   DISCUSSION

### A.   22 AAC 05.470 Is A Valid Regulation.

Smith argues that AS 33.30.011 does not authorize DOC to enact a regulation that allows the seizure of the money in his prisoner account to pay for the medical care of a prisoner that he injured.  DOC argues that the regulation enacted is reasonably necessary to carry out the purposes of AS 33.30.011.

Alaska Statute 33.30.011(1) provides:

The commissioner shall

(1)    establish, maintain, operate, and control correctional facilities suitable for the custody, care, and discipline of persons charged or convicted of offenses against the state or held under authority of state law; each correctional facility operated by the state shall be established, maintained, operated, and controlled in a manner that is consistent with AS 33.30.015; . . . .

22 AAC 05.470(a)(4) provides:

(a)    Only a disciplinary tribunal may impose punishment for an infraction. The disciplinary tribunal shall impose at least one, and may impose all, of the following penalties if the prisoner is found guilty of an infraction:

. . . .

(4)    restitution for the amount of property damage, theft, or, in the case of an injury, for the amount of medical care and related costs, or for costs incurred from a violation of 22 AAC 05.400(d)(19), including the placement of a hold on the prisoner's work compensation payments, withdrawal

---

[6]    *Wilson v. State, Dep't of Corr.*, 127 P.3d 826, 829 (Alaska 2006) (quoting *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971)).

of money from the prisoner's account, or requiring the prisoner to work without benefit of compensation; . . . .

When the validity of a regulation adopted under a statute is challenged, we "determine whether it is 'consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency' and whether it is 'reasonable and not arbitrary' considering the legislative purpose."[7]

Prohibiting mutual combat is reasonably necessary for the commissioner to "control correctional facilities."[8] In order to achieve this end, DOC has decided to impose monetary sanctions for injuries resulting from engaging in mutual combat.[9] We have never reviewed the reasonableness of imposing monetary sanctions on prisoners who violate DOC policies.

Other jurisdictions have held that regulations allowing for monetary sanctions are permitted when they are supported by statutes generally giving the corrections commissioner the authority to safely maintain the prison. In *Ciampi v. Commissioner of Correction*, an inmate caught with "home brew" alcohol was required to undergo urine tests and pay the $144 that the tests cost over the course of a year.[10] The Massachusetts Supreme Judicial Court reviewed a regulation promulgated pursuant to a statute providing:

> In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction . . . shall . . . (*b*) maintain security, safety and order at all state correctional facilities . . .

---

[7] *Id*.

[8] AS 33.30.011(1).

[9] 22 AAC 05.470.

[10] 892 N.E.2d 270, 272 (Mass. 2008).

(*i*) investigate grievances and inquire into alleged misconduct within state correctional facilities; . . . (*q*) make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding . . . safety, discipline . . . and custody for all persons committed to correctional facilities.[11]

The Massachusetts Supreme Judicial Court also used a deferential standard of review for regulations: "enforcement of regulations should be refused only if they are plainly in excess of legislative power."[12] The court applies "all rational presumptions in favor of the validity of the administrative action and [does] not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate."[13] The Massachusetts court observed that more specific statutes authorized deducting money from prisoner accounts for things like haircuts and medical care.[14] However, the broad power granted within the general disciplinary statute was held to be sufficient to support a regulation that required an inmate to pay for urine tests that his misbehavior had necessitated.[15]

---

[11] MASS. GEN. LAWS ch. 124, § 1 (2003), *quoted in Ciampi*, 892 N.E.2d at 273.

[12] *Ciampi*, 892 N.E.2d at 274 (Mass. 2008) (quoting *Berrios v. Dep't of Pub. Welfare*, 583 N.E.2d 856, 861 (Mass. 1992)) (internal quotation marks omitted).

[13] *Id*. (quoting *Consol. Cigar Corp. v. Dep't of Pub. Health*, 364 N.E.2d 1202 (Mass. 1977)) (internal quotation marks omitted).

[14] *Id*. at 275-76.

[15] *Id*. at 275.

In an Iowa case, *Overton v. State*, an inmate challenged an administrative action requiring him to pay for a staff member's broken eyeglasses.[16] In Iowa, the party challenging a regulation must "demonstrate that a rational agency could not conclude that the rule was within its delegated authority."[17] The court held that the assessed sanction was allowable under a statute authorizing the Iowa Department of Corrections to adopt rules that it "deems necessary to transact its business and for the administration and exercise of its powers and duties."[18]

In *Baker v. Wilmot*, the New York Supreme Court Appellate Division evaluated a regulation promulgated under a law giving the commissioner of the department of corrections the authority to "make such rules and regulations . . . for the government and discipline of each correctional facility. . . for the safety, security and control of correctional facilities."[19] The court held that the statute authorized restitution, even if the state had alternative means to secure reimbursement.[20]

The Oregon appellate court similarly held in *Curtis v. Oregon State Correctional Institution* that a general statute giving the Oregon State Correctional Institution the authority to "enforce obedience . . . by appropriate punishment"

---

[16] 493 N.W.2d 857, 858 (Iowa 1992).

[17] *Id*. at 859 (quoting *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 162 (Iowa 1987)).

[18] *Id*. at 859 (quoting IOWA CODE § 246.105(7) (now codified at IOWA CODE § 904.105(7) (2003))).

[19] 410 N.Y.S. 184, 185 (N.Y. App. Div. 1978) (quoting N.Y. CORR. LAW §§ 112, 137) (internal quotation marks omitted).

[20] *Id*.

authorized the prison system to require an inmate to pay for half of the value of tires that he had damaged.[21]

We conclude that interpreting AS 33.30.011 to allow DOC to order restitution for injuries caused by a prisoner is "reasonably necessary" to carry out the goals of the statute.[22] Numerous other state courts have found the same. 22 AAC 05.470 is a valid regulation.

**B.  22 AAC 05.470 Does Not Conflict With AS 33.30.028.**

Smith argues that DOC's regulation requiring him to pay reimbursement for the cost of injuries he inflicted on another inmate conflicts with the statute allocating the cost of inmate medical care.[23] DOC argues that AS 33.30.028 was enacted to save

---

[21]    532 P.2d 798, 799 (Or. App. 1975)

[22]    *See Wilson v. State, Dep't of Corr.*, 127 P.3d 826, 829 (Alaska 2006).

[23]    AS 33.30.028 provides:

(a)    Notwithstanding any other provision of law, the liability for payment of the costs of medical, psychological, and psychiatric care provided or made available to a prisoner committed to the custody of the commissioner is, subject to (b) of this section, the responsibility of the prisoner and the

(1)    prisoner's insurer if the prisoner is insured under existing individual health insurance, group health insurance, or any prepaid medical coverage;

(2)    Department of Health and Social Services if the prisoner is eligible for assistance under AS 47.07 or AS 47.25.120-47.25.300;

(3)    United States Department of Veterans Affairs if the prisoner is eligible for veterans' benefits that entitle the prisoner to reimbursement for the medical care or medical services;

(continued...)

the prison system money by requiring prisoners to pay for their own medical care when they can, and has no impact on the propriety of requiring reimbursement for the cost of injuries caused by an inmate.

In this case, looking at legislative history, DOC's argument that the intent of the statute is to save the State money on inmate medical care is correct. Alaska Statute 33.30.028 was passed as part of a bill providing for medical parole of terminally ill patients, with a view towards saving the State money on medical expenses.[24] Representative Mulder noted that the section that became AS 33.30.028 made it clear that if a prisoner had insurance, then that insurance would bear the primary responsibility for paying for the prisoner's medical costs.[25] At no point in the debate did the legislature suggest an intent that prisoners not be required to reimburse the prison for medical expenses arising from injuries caused by their misconduct.

In *State, Department of Corrections v. Hendricks-Pearce*, we recognized that the purpose of AS 33.30.028 was to reduce the State's prison health care costs.[26] 22 AAC 05.470 furthers this intent. Since the statute and the regulation do not conflict, the regulation is not invalidated by AS 33.30.028.

---

[23](...continued)
> (4)    United States Public Health Service, the Indian Health Service, or any affiliated group or agency if the prisoner is a Native American and is entitled to medical care from those agencies or groups; and

> (5)    parent or guardian of the prisoner if the prisoner is under the age of 18.

[24]    Minutes, House Judiciary Comm. Hearing on H.B. 219, 19th Leg., 1st Sess. at No. 140 (Mar. 24, 1995) (remarks of Representative Mulder).

[25]    *Id*. at No. 145.

[26]    254 P.3d 1088, 1092-93 (Alaska 2011).

Smith also claims that if Swan's injuries have been paid for by the Indian Health Service, he should not have to reimburse the prison. But we assume that if DOC receives restitution payments from Smith that exceed the actual costs incurred by DOC it will remit such payments to the relevant health care providers to be credited on their claims. The possibility that Smith's payments will exceed DOC's actual costs incurred seems unlikely since DOC paid seven separate providers a total of $29,826.16 for Swan's treatment while Smith's restitution obligation was only $7,310.79.

### C. It Was Not Error For The Superior Court To Order The Parties To Re-create The Record.

The audio recording of the disciplinary hearing is blank after the first minute. On appeal before the superior court, Judge Esch ordered the parties to submit their re-creation of the record of the disciplinary hearing. Smith and DOC each submitted a version of the hearing. Smith argues that "admi[tting]" the DOC's version of the hearing was error because it violated the rules of evidence; in particular, those against hearsay. He also argues that DOC's re-creation amounts to unsworn testimony. DOC argues that hearsay evidence is admissible in inmate disciplinary proceedings if it appears reliable, that submission of a statement in lieu of a transcript is permissible, that the lawyer's signature on the re-creation under Civil Rule 11 constitutes a certificate that the hearing was accurate to the best of her knowledge, and that Smith has not shown any prejudice from DOC's submission.

#### 1. The re-creation of the record was not error.

The Alaska Rules of Appellate Procedure allow the appellant to submit a statement in lieu of a transcript, even if that statement is created from the appellant's recollection.[27] The appellee has the right to challenge this statement via objections or

---

[27] Alaska R. App. P. 210(b)(8).

proposed amendments.[28]  The court then has the power to settle differences between the parties' proposed records.[29]  In this case, the superior court, hearing an appeal from the disciplinary hearing, ordered both parties to submit statements of the evidence at the disciplinary hearing.  This procedure was explicitly ordered by this court in *Carlson v. Renkes*, where the tape recording of an inmate classification hearing was "no longer available."[30]  Smith mischaracterizes the re-creation of the record as testimony or evidence.  The Alaska Rules of Appellate Procedure and our case law explicitly authorize Judge Esch's order to the parties.  It was not error for the superior court to admit DOC's re-creation of the disciplinary proceeding.

### 2. Smith was not prejudiced by the re-creation of the hearing.

Moreover, in order to show reversible error, Smith must show that any improper admission of DOC's version of the record could have had some impact on the outcome of the superior court decision.[31]  Smith's version of the disciplinary hearing differs from DOC's in only two ways.  First, he claims that he raised an objection at the hearing to his money being taken away.  Second, there is a dispute over who threw the first punch in the altercation between Smith and Swan.

Judge Esch noted that it was irrelevant who struck the first blow, since Smith pleaded guilty to mutual combat, and it was undisputed that Smith had broken Swan's jaw.  He also evaluated Smith's claim that 22 AAC 05.470 was invalid on its merits, rather than dismissing it for not having been preserved at the disciplinary hearing.

---

[28]  *Id*.

[29]  Alaska R. App. P. 210(i).

[30]  113 P.3d 638, 640, 642-43 (Alaska 2005).

[31]  Alaska R. Civ. P. 61; *Sloan v. Atl. Richfield Co.*, 541 P.2d 717, 722 (Alaska 1975).

Since Smith has failed to show that the re-creation of the hearing prejudiced him in any way, his point concerning the re-created record cannot serve as a basis for reversal.

## V.  CONCLUSION

We AFFIRM the judgment of the superior court.